## UNITED STATES *v.* SHIPP.

### INFORMATION IN CONTEMPT.

No. 12, Original.    Argued December 4, 5, 1906.—Decided December 24, 1906.

Even if the Circuit Court of the United States has no jurisdiction to entertain the petition for *habeas corpus* of one convicted in the state court, and this court has no jurisdiction of an appeal from the order of the Circuit Court denying the petition, this court, and this court alone, has jurisdiction to decide whether the case is properly before it, and, until its judgment declining jurisdiction is announced, it has authority to make orders to preserve existing conditions, and a willful disregard of those orders constitutes contempt.

Where the contempt consists of personal presence and overt acts those charged therewith cannot be purged by their mere disavowal of intent under oath.

In contempt proceedings the court is not a party; there is nothing that affects the judges in their own persons and their only concern is that the law should be obeyed and enforced.

After an appeal has been allowed by one of the justices of this court, and an order entered that all proceedings against appellant be stayed and his custody retained pending appeal, the acts of persons having knowledge of such order, in creating a mob and taking appellant from his place of confinement and hanging him, constitute contempt of this court, and it is immaterial whether appellant's custodian be regarded as a mere state officer or as bailee of the United States under the order.

THE facts are stated in the opinion.

*The Solicitor General* with whom *The Attorney General* was on the brief, for the United States:

There is no right to a trial by jury in contempt cases. *Eilenbecker* v. *Plymouth County*, 134 U. S. 31; *Ex parte Terry*, 128 U. S. 289; *Ex parte Savin*, 131 U. S. 267; *Ex parte Cuddy*, 131 U. S. 280; *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447, 489; *In re Debs*, 158 U. S. 564.

The Circuit Court had jurisdiction of the *Johnson case*, and this court had jurisdiction on appeal. Sec. 753, Rev. Stat.; *Ex parte Royall*, 117 U. S. 241; *In re Terry*, 128 U. S. 289; *In re Loney*, 134 U. S. 372; *In re Neagle*, 135 U. S. 1; *In re Wood*, 104 U. S. 278; *In re Burrus*, 136 U. S. 586; *Cook* v. *Hart*, 146 U. S. 183; *In re Frederich*, 149 U. S. 70; *New York* v. *Eno*, 155 U. S. 89; *Whitten* v. *Tomlinson*, 160 U. S. 240; *Baker* v. *Grice*, 169 U. S. 284; *Tinsley* v. *Anderson*, 171 U. S. 101; *Davis* v. *Burke*, 179 U. S. 399. In the *Royall case* the court laid down, and the later cases amplified, certain rules as to the exercise of this jurisdiction. The court has thus guided the jurisdiction, but has never doubted or restricted it.

That the petitioner is held under the authority of a State cannot affect the question of the power or jurisdiction of the Circuit Court to inquire into the cause of his commitment. See *Royall's case*, *Whitten* v. *Tomlinson* and *In re Burrus, supra*. The Circuit Court is not bound to discharge, because it may and does remand, and that means that it may validly take jurisdiction of a case where the claim of violation of Federal right is not established; it has jurisdiction to consider and decide either way. The opposing argument really means that if upon deliberate examination the court concludes that the claim of alleged violation of Federal law is without merit, then the court was without jurisdiction *ab initio*. That is wholly untenable.

In this class of appeals this court has always affirmed or reversed the judgment below, and has never dismissed for want of jurisdiction in the Circuit Court.

As to the jurisdiction of this court. An appeal may be taken to the Supreme Court in the case of any person alleged to be restrained of his liberty in violation of the Constitution, etc. Secs. 763, 764, Rev. Stat.; act of March 3, 1885, 23

Stat. 437. This right has not been taken away because the language of § 5 of the Circuit Court of Appeals act is "involves the construction or application of the Constitution of the United States." *Cross v. Burke,* 146 U. S. 82; *Ex parte Lennon,* 150 U. S. 393; *Craemer v. State,* 168 U. S. 124. The appeal here is matter of right. The court was bound to allow it. When a claim under the Constitution of the United States is properly alleged, however unfounded it may turn out to be, this court deliberately considers the claim and retains the case in its grasp and under its power in all respects and for all purposes until final judgment dismissing, affirming or reversing has been rendered and the mandate thereon executed. If an appeal is technically frivolous, it is for this court to say so. A case which ultimately goes out of this court on that ground is completely here within the jurisdiction until it does go. The proposition that when the question of jurisdiction is doubtful, individuals and communities need not respect the court's orders and mobs may do as they please is self-destructive.

The right of appeal may be abused; an appeal may be frivolous and without merit; the delays of the law are often exasperating; but none of these considerations is the slightest excuse for speculating about the court's jurisdiction, or anticipating its judgment, or disobeying its command.

Power to punish for contempts is inherent in all courts for the purpose of enforcing judgments and orders and compelling submission to lawful mandates, as well as for the purpose of preserving order and imposing respect and decorum in the presence of the court. *Anderson v. Dunn,* 6 Wheat. 204; *Cooper's case,* 33 Vermont, 253; *Ex parte Robinson,* 19 Wall. 505; *Ex parte Terry,* 128 U. S. 289, and authorities cited. The power and dignity of this court are paramount. This court is preëminent as speaking the last word for the judicial power, and looks to the Constitution, not only for its origin in general, but for its express creation, while the inferior Federal courts look to Congress for their actual being, functions and jurisdiction. It may be doubted whether Congress could

limit the authority of this court over contempts, and whether the restrictions of § 725, Revised Statutes, apply to this court, although professing to apply to all courts of the United States. This court had expressed that doubt. An act of Congress controls the courts of its own creation, but not this court, if thereby its organic authority and jurisdiction under the Constitution are curtailed. The general and inherent authority of this court, of whatever nature, does not need any statutory grant of power and is not subject to statutory restrictions. Comparison of the statutory language suggests reasons for thinking that the phrase "courts of the United States" does not always include this court. Secs. 9–17, Judiciary Act of 1789; §§ 716, 724–726, Rev. Stat.; *Ex parte Robinson*, 19 Wall. 505. Compare *In re Tampa Suburban R. R. Co.*, 168 U. S. 583, and *In re Vidal*, 179 U. S. 126, suggesting that an inherent general power of the court may go further than statutory authority.

But this case is clearly within § 725, which extends the power of punishment to the disobedience or resistance by any party, etc., "*or other person* to any lawful . . . order . . . or command of the said courts." This was not a contempt in the face of the court, or constructively in its presence. *Ex parte Terry*, 128 U. S. 289; *Savin, Petitioner*, 131 U. S. 267. It is one of the "matters that arise at a distance," 4 Bl. Com., 286, and accordingly a rule to show cause issued instead of an instant attachment. The vital matter of refusing to obey the court's command is as serious in the remotest corners of the country as in the courtroom.

*Eilenbecker* v. *Plymouth Co.*, *supra*, emphasizes the proposition that although the power to punish in contempt is restricted by § 725, the necessary and fundamental power to enforce obedience to lawful orders or to punish for disobeying them is left untouched. The power of a court to make an order carries with it the equal power to punish for a disobedience of that order. *Debs case*, 158 U. S. 594; and the power is summary. *In re Savin*, 131 U. S. 267, 276.

This was murder by a mob, and was an offense against the State as well as against the United States and this court; but the same act may be a crime both against the State and the United States, and the United States has complete power to punish, whether the State does or not. *Cross* v. *North Carolina,* 132 U. S. 131; *Pettibone* v. *United States,* 148 U. S. 197; *Crossley* v. *California,* 168 U. S. 640.

As to purgation under oath,—the old rule was that if one charged in contempt deny upon oath, he is discharged of the contempt, but may be prosecuted for perjury if he has foresworn himself. *King* v. *Sims,* 12 Mod. 511; *King* v. *Vaughan,* 2 Doug. 516. The rule is followed in modern times, e. g., the *May case,* 1 Fed. Rep. 737, but it is held in applying it that the question in every case is whether the facts are consistent with an honest intent, and sound judicial discretion controls. *In re Perkins,* 100 Fed. Rep. 950. The rule in equity is different; testimony will be heard to contradict as well as support the statements of one charged with contempt. *Underwood's case,* 2 Humph. 46; *Thompson* v. *Pennsylvania R. R. Co.,* 48 N. J. Eq. 105; *United States* v. *Anonymous,* 21 Fed. Rep. 761; *Debs case,* 64 Fed. Rep. 724; *United States* v. *Sweeney,* 95 Fed. Rep. 434. But the distinction between the rule in law and equity does not seem to be entirely approved in modern times. *Underwood's case, ut supra; Cartwright's case,* 114 Massachusetts, 230. In *Savin, Petitioner,* 131 U. S. 267, 278, 279, the person charged testified under oath on his own behalf, but his oath did not clear him; he had an opportunity to make his defense, but he had to make it and was adjudged guilty. And see also *In re Watts & Sachs,* 190 U. S. 1, 15. The cases which apply the rule relate to relatively trifling matters and to matters where there was no intentional disrespect, or contempt and where the respondents were excused rather than acquitted. *People* v. *Few,* 2 Johns. 289; *Matter of Moore,* 63 N. Car. 397; *In re Walker,* 82 N. Car. 95; *State* v. *Earl,* 41 Indiana, 464; *Burke* v. *State,* 47 Indiana, 528; *Haskett* v. *State,* 51 Indiana, 176; *Oster* v. *People,* 192 Illinois, 473.

There are numerous well-considered authorities in the state courts refusing to follow the rule. *Hughes* v. *People,* 5 Colorado, 436; *State* v. *Simmons,* 1 Arkansas, 265; *Matter of Snyder,* 103 N. Y. 178; *Wise* v. *Chaney,* 67 Iowa, 73; *Crow* v. *State,* 24 Texas, 12; *Watson* v. *Bank,* 5 S. Car. 159; *Huntington* v. *Mc-Mahon,* 48 Connecticut, 174; *State* v. *Matthews,* 37 N. H. 450.

It is not necessary to go into the confusions and distinctions between direct and constructive, remedial and punitive contempts and the other classifications. This was aggravated, and that is enough. There are many contempts as aggravated as those directed at the court itself in open court. See instances noted in *United States* v. *Anonymous;* 21 Fed. Rep. 769, 770.

This contempt was the crime and sin of murder, but because the proceeding is by contempt and not by indictment, a criminal may not deny his crime and then be liable to the bare possibility of the lighter charge of perjury. A contempt committed by a crime is none the less a crime because it is a contempt. *Debs case,* 64 Fed. Rep. 753. The anomaly and anachronism of "trying a man on his own oath," which Blackstone excuses in favor of liberty (4 Comm. 287) ought not to survive into these days.

Whether the court's order constituted the sheriff an officer *pro hac vice* of this court, is not material. The order went to the sheriff with sovereign force in whatever capacity he is regarded, having in fact the legal custody of the prisoner. A state officer having prisoners committed to his custody by a court of the United States is an officer of the United States. *Randolph* v. *Donaldson,* 9 Cr. 86; *In re Birdsong,* 39 Fed. Rep. 599.

Mr. *Judson Harmon,* Mr. *Lewis Shepherd,* Mr. *G. W. Chamlee* and Mr. *Robert B. Cooke,* with whom Mr. *Robert Pritchard,* Mr. *Martin A. Fleming* and Mr. *T. P. Shepherd* were on the brief, for defendants:

While the appellate jurisdiction of this court is derived

from the Constitution, it is "with such exceptions and under such regulations as Congress shall make." Art. III., Sec. 2; *Nat. Exchange Bank* v. *Peters*, 144 U. S. 570; *Cross* v. *United States*, 145 U. 'S. 571; *In re Gläser*, 198 U. S. 171.

The right of appeal here must be found, if at all, in the fifth clause of section 5 of the Circuit Court of Appeals Act of March 3, 1891, "in any case that involves the construction or application of the Constitution of the United States." *In re Lennon*, 150 U. S. 393, 398.

The mere allowance of an appeal is insufficient to give the court jurisdiction of a case which from its nature is not appealable.

It is proposed to make the order allowing the appeal and the alleged acts of the defendants in preventing the court from hearing the case the basis of affirmative penal action against them, so that the question is fundamental whether the case in which the order was made was one which in fact came within the limited appellate jurisdiction of the court; whether Johnson really had the right, of which the defendants are charged with depriving him, to have this court hear his case; because if an order be made without jurisdiction there can be no punishment for contempt. *Ex parte Rowland*, 104 U. S. 604, 612; *Ex parte Fisk*, 113 U. S. 713; *In re Sawyer*, 124 U. S. 200. Johnson's proceeding in *habeas corpus* in the Circuit Court did not in fact constitute a "case that involves the construction or application of the Constitution of the United States." This being so this court had no jurisdiction of it and should now so hold for the purposes of this proceeding, just as it would have done if the State of Tennessee had raised the question on the pretended appeal. *Rogers* v. *Peck*, 199 U. S. 425; *In re Lennon*, 150 U. S. 393, 399; *Carey* v. *Houston & T. C. Ry.*, 150 U. S. 170, 181; *Carter* v. *Roberts*, 177 U. S. 496; *C. H. & D. Ry.* v. *Thiebaud*, 177 U. S. 615, 620.

The exceptional cases in which resort may be had to *habeas corpus* in the Federal courts, instead of to the highest court of the State, are only those of public, and not mere private.

emergency, where the operations of the Government are affected, as by the imprisonment of an officer. *Whitten* v. *Tomlinson*, 160 U. S. 231, 242, 247; *Kohl* v. *Lehlback*, 160 U. S. 293.

The constitutional question must be real and substantial. *Storti* v. *Massachusetts*, 183 U. S. 138; *Bradley* v. *Lightcap*, No. 3, 195 U. S. 25; *Wilson* v. *North Carolina*, 169 U. S. 586.

The Federal question cannot be first raised in the assignment of errors, but there must have been a definite claim of a right under the Constitution or laws of the United States. *Muse* v. *Arlington Hotel Co.*, 168 U. S. 430; *Ansbro* v. *United States*, 159 U. S. 695; *Chicago & N. W. Ry.* v. *Chicago*, 164 U. S. 454.

The claims of Johnson that he was deprived of constitutional rights were not real and substantial, but were absolutely frivolous and wholly without foundation. *Storti* v. *Massachusetts*, 183 U. S. 138.

The case here presented involves neither a denial of justice, whether by the laws of Tennessee, or by the mode in which they were administered, nor the invasion of a right secured by the Federal Constitution. It was, therefore, not a case of which the Circuit Court or this court was authorized to take cognizance.

The contempt charged in this case belongs to the class known as criminal or constructive contempts in which the answer of the contemnor is conclusive. *Rex* v. *Vaughan*, 2 Doug. 516; *Rex* v. *Sims*, 12 Mod. 511; *United States* v. *Dodge*, 2 Gall. (U. S.) 313; *In re May*, 1 Fed. Rep. 737; *Haskett* v. *State*, 51 Indiana, 176; *Burke* v. *State*, 47 Indiana, 528; *State* v. *Earle*, 41 Indiana, 464; *People* v. *Few*, 2 Johns. 290; *Matter of Walker*, 82 N. Car. 95; *Matter of Moore*, 63 N. Car. 397; *Thomas* v. *Cummings*, 1 Yates (Pa.), 40; *Underwood's case*, 2 Hump. (Tenn.) 46.

The defendants having severally answered and fully denied the contempts charged against them are, therefore, under the foregoing authorities, entitled to their discharge.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an information charging a contempt of this court and is to the following effect. On February 11, 1906, one Johnson, a colored man, was convicted of rape upon a white woman, in a criminal court of Hamilton County, in the State of Tennessee, and was sentenced to death. On March 3 he presented a petition for a writ of *habeas corpus* to the United States Circuit Court, setting up, among other things, that all Negroes had been excluded, illegally, from the grand and petit juries; that his counsel had been deterred from pleading that fact or challenging the array on that ground, and also from asking for a change of venue to secure an impartial trial, or for a continuance to allow the excitement to subside, by the fear and danger of mob violence; and that a motion for a new trial and an appeal were prevented by the same fear. For these and other reasons it was alleged that he was deprived of various constitutional rights, and was about to be deprived of his life without due process of law.

On March 10, after a hearing upon evidence, the petition was denied, and it was ordered that the petitioner be remanded to the custody of the sheriff of Hamilton County, to be detained by him in his custody for a period of ten days, in which to enable the petitioner to prosecute an appeal, and in default of the prosecution of the appeal within that time to be then further proceeded with by the state court under its sentence. On March 17 an appeal to this court was allowed by Mr. Justice Harlan. On the following Monday, March 19, a similar order was made by this court, and it was ordered further "that all proceedings against the appellant be stayed, and the custody of said appellant be retained pending this appeal."

The sheriff of Hamilton County was notified by telegraph of the order, receiving the news before six o'clock on the same day. The evening papers of Chattanooga published a full account of what this court had done. And it is alleged that

the sheriff and his deputies were informed, and had reason to believe, that an attempt would be made that night by a mob to murder the prisoner. Nevertheless, if the allegations be true, the sheriff early in the evening withdrew the customary guard from the jail, and left only the night jailer in charge. Subsequently, it is alleged, the sheriff and the other defendants, with many others unknown, conspired to break into the jail for the purpose of lynching and murdering Johnson, with intent to show contempt for the order of this court, and for the purpose of preventing it from hearing the appeal and Johnson from exercising his rights. In furtherance of this conspiracy a mob, including the defendants, except the sheriff Shipp and the night jailer, Gibson, broke into the jail, took Johnson out and hanged him, the sheriff and Gibson pretending to do their duty, but really sympathizing with and abetting the mob. The final acts as well as the conspiracy are alleged as a contempt.

The defendants have appeared and answered, and certain preliminary questions of law have been argued which it is convenient and just to have settled at the outset before any further steps are taken. The first question, naturally, is that of the jurisdiction of this court. The jurisdiction to punish for a contempt is not denied as a general abstract proposition, as, of course, it could not be with success. *Ex parte Robinson*, 19 Wall. 505, 510; *Ex parte Terry*, 128 U. S. 289, 302, 303. But it is argued that the Circuit Court had no jurisdiction in the *habeas corpus* case, unless Johnson was in custody in violation of the Constitution, Rev. Stat. § 753, and that the appellate jurisdiction of this court was dependent on the act of March 3, 1891, c. 517, § 5, 26 Stat. 827, *In re Lennon*, 150 U. S. 393, and by that act did not exist unless the case involved "the construction or application of the Constitution of the United States." If the case did not involve the application of the Constitution, otherwise than by way of pretense, it is said that this court was without jurisdiction, and that its order might be contemned with impunity. And it is urged

that an inspection of the evidence before the Circuit Court, if not the face of the petition, shows that the ground alleged for the writ was only a pretense.

We regard this argument as unsound. It has been held, it is true, that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt. *In re Sawyer,* 124 U. S. 200; *Ex parte Fisk,* 113 U. S. 713; *Ex parte Rowland,* 104 U. S. 604. But even if the Circuit Court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument and to take the time required for such consideration as it might need. See *Mansfield, Coldwater & Lake Michigan Ry. Co.* v. *Swan,* 111 U. S. 379, 387. Until its judgment declining jurisdiction should be announced, it had authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time. Rev. Stat. § 766; act of March 3, 1893, c. 226, 27 Stat. 751. The fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either way, and therefore must provide for it. Of course the provision of Rev. Stat. § 766, that until final judgment on the appeal further proceedings in the state court against the prisoner shall be deemed void, applies to every case. There is no implied exception if the final judgment shall happen to be that the writ should not have issued or that the appeal should be dismissed.

It is proper that we should add that we are unable to agree with the premises upon which the conclusion just denied is based. We cannot regard the grounds upon which the petition for *habeas corpus* was presented as frivolous or a mere pretense. The murder of the petitioner has made it impossible to decide

that case, and what we have said makes it unnecessary to pass upon it as a preliminary to deciding the question before us. Therefore we shall say no more than that it does not appear to us clear that the subject matter of the petition was beyond the jurisdiction of the Circuit Court, and that, in our opinion, the facts that might have been found would have required the gravest and most anxious consideration before the petition could have been denied.

Another general question is to be answered at this time. The defendants severally have denied under oath in their answer that they had anything to do with the murder. It is urged that the sworn answers are conclusive, that if they are false the parties may be prosecuted for perjury, but that in this proceeding they are to be tried, if they so elect, simply by their oaths. It has been suggested that the court is a party and therefore leaves the fact to be decided by the defendant. But this is a mere afterthought to explain something not understood. The court is not a party. There is nothing that affects the judges in their own persons. Their concern is only that the law should be obeyed and enforced, and their interest is no other than that they represent in every case. On this occasion we shall not go into the history of the notion. It may be that it was an intrusion or perversion of the canon law, as is suggested by the propounding of interrogatories and the very phrase, purgation by oath (*juramentum purgatorium*). If so, it is a fragment of a system of proof which does not prevail in theory or as a whole, and the reason why it has not disappeared perhaps may be found in the rarity with which contempts occur. It may be that even now, if the sole question were the intent of an ambiguous act, the proposition would apply. But in this case it is a question of personal presence and overt acts. If the presence and the acts should be proved there would be little room for the disavowal of intent. And when the acts alleged consist in taking part in a murder it cannot be admitted that a general denial and affidavit should dispose of the case. The outward facts

are matters known to many and they will be ascertained by testimony in the usual way. The question was left open in *Ex parte Savin*, 131 U. S. 267, with a visible leaning toward the conclusion to which we come, and that conclusion has been adopted by state courts in decisions entitled to respect. *Huntington* v. *McMahon*, 48 Connecticut, 174, 200, 201; *State* v. *Matthews*, 37 N. H. 450, 455; *Bates's case*, 55 N. H. 325, 327; *Matter of Snyder*, 103 N. Y. 178, 181; *Crow* v. *State*, 24 Texas, 12, 14; *State* v. *Harper's Ferry Bridge Co.*, 16 W. Va. 864, 873. See *Wartman* v. *Wartman*, Taney, 362, 370; *Cartwright's case*, 114 Massachusetts, 230; *Eilenbecker* v. *Plymouth County*, 134 U. S. 31. Whether or not Rev. Stat. § 725 applies to this court, it embodies the law so far as it goes. We see no reason for emasculating the power given by that section, and making it so nearly futile as it would be if it were construed to mean that all contemnors willing to run the slight risk of a conviction for perjury can escape.

The question was touched, in argument, whether the acts charged constitute a contempt. We are of opinion that they do, and that their character does not depend upon a nice inquiry, whether, after the order made by this court, the sheriff was to be regarded as bailee of the United States or still held the prisoner in the name of the State alone. Either way, the order suspended further proceedings by the State against the prisoner and required that he should be forthcoming to abide the further order of this court. It may be found that what created the mob and led to the crime was the unwillingness of its members to submit to the delay required for the trial of the appeal. From that to the intent to prevent that delay and the hearing of the appeal is a short step. If that step is taken the contempt is proved.

These preliminaries being settled the trial of the case will proceed.

MR. JUSTICE MOODY took no part in the decision.