### In re ORIEL et al.

(District Court, S. D. New York. March 1, 1927.)

**1. Bankruptcy ⏀⟹136(10)—Referee's turn-over order, approved by court, is conclusive in contempt proceeding on question of bankrupt's ability to comply with order when entered.**

Order of referee, approved by District Court, requiring bankrupts to turn over certain books to receiver, is conclusive on question of ability to comply with terms of order when entered, and question of ability to comply at that time cannot be raised on motion to punish for contempt in failing to obey order.

**2. Bankruptcy ⏀⟹136(9)—Proceeding to punish bankrupts for failing to obey turn-over order is governed by civil rules of proof.**

Proceeding to punish bankrupts for contempt in failing to turn over to receiver certain books pursuant to referee's order, being civil in its nature is to be governed by civil rules of proof, and does not require proof beyond reasonable doubt, as in criminal cases.

In Bankruptcy. In the matter of the bankruptcy of Harry Oriel and another, individually and as members of the firm of Oriel, Confino & Co. On motion to punish bankrupts for contempt in failing to turn over to receiver certain of their books, pursuant to an order of the referee. Motion granted.

Benjamin Siegel, of New York City, for receiver.

Hartman & Levy, of New York City (Hugo Levy, of New York City, of counsel), for bankrupts.

THACHER, District Judge. In opposition to this motion each of the bankrupts submits an affidavit reiterating his statement, made under oath before the referee upon the turn-over proceeding, that he has not seen the books in question since February, 1926, more than six months prior to the petition in bankruptcy, and has turned over to the receiver all books in his possession relating to the bankrupt's business. In each affidavit there is a prayer that the court read the record made upon the turn-over proceedings, where it is claimed the proof was not sufficient to warrant the entry of the order. Each affidavit further states that the deponent has not the slightest intention of offending the court, and would readily and cheerfully obey its orders, if it were in his power to do so; it being insisted that the order to produce the books is a direction to do an impossible thing, and that, so far as the deponent knows, the books are not in existence, and he has no means of telling where they can be located, if they are in existence.

In a supplemental brief, counsel for the bankrupts request consideration of the record in the turn-over proceeding de novo, contending that it does not there appear beyond reasonable doubt that the bankrupts had the books when it was found in that proceeding that they did have them and they were ordered to turn them over. Thus the question left open in Re J. H. Small Shoe Co., 16 F.(2d) 205, is squarely presented. Speaking of such a proceeding as this, the court, in an opinion by Learned Hand, C. J., there said:

"At best, he [the respondent] has only to two courses open to him· First, he may accept the order as correct when made, in which case he must show that he has, since its entry, disposed of the money then found to be in his hands or within his control. Whether the trustee still has the burden of proof we need not now say, but the duty of going forward is upon the respondent, and he can fulfill it only by accounting circumstantially for his disposition of the property.

"His other possible course depends upon the assumption that the measure of proof in contempt proceedings is criminal; i. e., beyond a reasonable doubt, a question on which we do not now pass. If so, he may argue that he was not shown beyond a reasonable doubt to have had possession of the property when the summary order was entered. This he cannot do without putting in evidence in the contempt proceedings the record in the summary proceedings, together with any other evidence not merely cumulative. If the criminal rule applies, the trustee would then have to satisfy the court beyond a reasonable doubt that the respondent had possession of the property at the time when the summary order was entered. In no event will it serve for the respondent to rest upon his oath that at the moment he is without means. Were it so, the whole summary proceedings would be the solemn fatuity, which they have been in this case up to the present time."

[1] It will be noted that the question whether the second course is open to the respondent was not decided by the court. Nor is there any authority in this circuit for such practice. In re Stavrahn, 174 F. 330, 20 Ann. Cas. 888 (C. C. A. 2d), held that the summary order to surrender or pay made out a prima facie case. In re Weber Co., 200 F. 404 (C. C. A. 2d), repeated this, and went further, holding that the prima facie case was not answered by the respondent's bare denial that he could then comply with the order.

So far as the practice in this court is concerned, it was settled by In re Frankel (D. C.) 184 F. 539, where Judge Learned Hand, expressing serious doubt upon the merits of the summary order, nevertheless held it to be conclusive upon the question of the respondent's ability to comply with its terms at the time of its entry. In the course of his opinion he said it was the undoubted "practice in this district to treat such orders as conclusive estoppels upon the date of their entry, and to leave open to the respondent only the issue of showing what he has done with the money since that time." Although what was said by the same judge in the Small Shoe Company Case may perhaps seriously question the correctness of his prior decision in this court, the point, being reserved, cannot be said to have been decided, and the Frankel Case, although questioned, has not been overruled. Until it is, it should be followed in this court.

In reaching this conclusion I am impressed with the soundness of the decision in the Frankel Case, because it seems to be in accord with the practice of courts of equity, in cases of civil contempt, to enforce by coercive means, through the process of attachment, compliance with the affirmative commands of their decrees. The merits of the case in which an injunction is duly issued by a court of general jurisdiction is never open

to inquiry in such proceedings. Howat v. Kansas, 258 U. S. 181, 42 S. Ct. 277, 66 L. Ed. 550; Huttig Sash., etc., Co. v. Fuelle (C. C.) 143 F. 363; U. S. v. Debs (C. C.) 64 F. 724; People v. Van Buren, 136 N. Y. 252, 32 N. E. 775, 20 L. R. A. 446; People v. Spalding, 2 Paige (N. Y.) 326; Hamlin v. N. Y. etc., Ry. Co., 170 Mass. 548, 49 N. E. 922; Russell v. East Anglian R. Co., 2 Macn. & G. 104; Woodward v. Lincoln, 3 Swanst. 626.

In this state, where the surrogates are given power by statute to enforce their orders by contempt proceedings, it is held in the Court of Appeals that, when process of contempt is employed to enforce compliance by an executor with a decree of distribution directing the payment of money, the investigation is limited to the service of the decree upon him and the facts of neglect constituting his violation of the decree. Matter of Snyder, 103 N. Y. 178, 8 N. E. 479. In all such cases the purpose of the proceeding is to coerce compliance with an order or decree entered after full hearing and careful determination, adjudicating rights existing between the parties to the litigation. Once those rights are determined by a court having jurisdiction, there can in equity be no withholding of the process of the court employed for their enforcement; and in answer to the process of attachment the respondent is never permitted to question upon the merits the order or decree which he has disobeyed. The commitment in such cases has been aptly said not to be distinguishable in substance from a capias ad satisfaciendum, founded on a judgment at law. Adams v. Adams, 80 N. J. Eq. 182, 83 A. 190, Ann. Cas. 1913E, 1083; Chase's Blackstone, 833.

Surely it cannot be said to be sufficient answer to such a writ to question the judgment at law or decree in equity as not supported by evidence excluding all reasonable doubt upon the issues upon the determination of which adjudication was had. The doctrine that an injunction duly issuing out of a court of general jurisdiction, with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed, and cannot be questioned in contempt proceedings, has been carried so far that the Supreme Court of the United States has said that, even if the court issuing the injunction erred in assuming the validity of a void law going to the merits of the case, the invalidity of the law will not be examined in proceedings to punish criminally the violation of the injunction. Howat v. Kansas, 258 U. S. 181, 42 S. Ct. 277, 66 L. Ed. 550.

It is to be noted that this was said of a case of criminal contempt, in which the defendants were sentenced to imprisonment for one year. Nothing could more emphatically show the conclusiveness of an order or decree in proceedings to punish its violation or to coerce its performance. And the case is authority for the application of the rule, not only in civil contempt, but in criminal contempt as well. For these reasons, and for the reasons well stated by Judge Hand in his opinion in the Frankel Case, I believe that case should be regarded as authoritative until overruled by superior authority.

It would be quite unnecessary to add more, had not the decision in the Frankel Case been questioned by the suggestion that the respondent may possibly argue, if the rule of proof in cases of civil contempt is criminal (i. e., beyond a reasonable doubt), that he was not shown beyond a reasonable doubt to have had possession of the property when the summary order was entered. The question of the proper measure of proof in such a case as this is one upon which the decisions are in great conflict. The rule in criminal contempt was settled in Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; but this proceeding is for civil contempt. If the respondents are committed, their imprisonment will be purely remedial, and in no sense punitive. It will terminate upon compliance with the order, which has been entered after full hearing and upon adjudication of their ability to comply. They have not suggested in this proceeding any impropriety in the entry of the summary order, nor have they moved to vacate it upon any ground. They question the power of the court to coerce compliance with its terms, not by questioning its propriety, but the measure of proof upon which it was entered.

If the decision in the Frankel Case should be overruled, it is apparently the opinion of the Circuit Court of Appeals that the question here presented will depend upon a determination of the proper measure of proof in a proceeding for civil contempt. That the proceeding is civil in its essence, and is in no sense punitive, is clearly shown by the Opinions of the Supreme Court in Gompers v. Buck's Stove & Range Co., supra, and Michaelson v United States, 266 U. S. 42, 66, 45 S Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451. It is, as already shown, the civil process of attachment in equity, which in substance is not distinguishable from the legal process of capias ad satisfaciendum, and I know of no reason peculiar to bankruptcy why the ordinary

rules of proof in civil cases should not apply. Whatever may be the source of rules governing practice in criminal contempt, it is, I believe, from the practice in chancery that the process and practice in civil contempt has come.

The disposition to accept the bankrupt's affidavit in contradiction of the summary order, at least to the extent of necessitating inquiry as to the weight of the proofs upon which the summary order was entered, seems to be a survival of the conclusive effect given to such an affidavit in criminal contempt proceedings at the common law. Stuart v. Reynolds, 204 F. 709 (C. C. A. 5th). Whatever the source of the anachronism of compurgation, which, as Blackstone says, was more favorable to the defendant's liberty than the process in equity, though perhaps no less dangerous to his conscience (Chase's Blackstone, 995), such doctrines cannot now prevail, even in criminal contempt proceedings, as I believe they have never prevailed in the process of equitable attachment for the disobedience of equitable decrees (Ex parte Savin, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150; United States v. Shipp, 203 U. S. 563, 27 S. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265).

The precise question here under discussion was reserved by the Supreme Court in its opinion in the Gompers Case, supra, and in Henkin v. Fousek, 246 F. 285, the Circuit Court of Appeals for the Eight Circuit said: "It is doubtful whether, in civil contempt proceedings, it is necessary to prove the contempt case beyond all reasonable doubt. The Supreme Court of the United States expressly declined to pass upon that question in Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 444, 31 S. Ct. 492, 55 L. R. A. (N. S.) 874." In the Fourth circuit it was held that before the commitment was issued the respondent's present ability to comply should be shown by proof sufficient to establish the fact beyond reasonable doubt, and in this connection it was said that the judge should consider the record upon which the summary order was entered. Kirsner v. Taliaferro, 202 F. 51 (C. C. A. 4th).

The criminal measure of proof was adopted in Stuart v. Reynolds, supra, because it was thought that the proceeding was a criminal case, governed by criminal rules of evidence, and because it was also thought that a remnant at least of the old doctrine of compurgation still survived the decision of the Supreme Court in United States v. Shipp, supra, to which the court gave effect to the extent of requiring proof beyond a reasonable doubt to overcome the oath of the respondent. In the Kirsner Case, supra, Judge Rose points out that many of the cases hold that the summary order may be passed upon less conclusive evidence than that which will be required to justify an order for committal for failure to comply with the summary order. "The reason assigned," he says, "is usually that the first is a civil and the latter a criminal proceeding." But he adds: "It is very doubtful whether this explanation is well founded in law. Most, if not all, the cases in which it is made, were decided before the Supreme Court, in Gompers v. Buck's Stove & Range Co., 221 U. S. 418; 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, so elaborately discussed the distinctions between civil and criminal contempts."

Judge Rose, thus regarding the nature of the proceeding as probably not per se justifying the criminal rule of proof, put the decision upon grounds of caution, which should be exercised lest an individual in this class of cases be imprisoned for not doing that which upon his oath he states it is impossible for him to do. Judge Brown, in this court, regarding the process as punitive, held in Re McCormick (D. C.) 97 F. 566, that the power should be exercised cautiously, and in cases only where willful disobedience by the bankrupt is proved beyond reasonable doubt, as in a criminal case. In Freed v. Central Trust Co., 215 F. 873 (C. C. A. 7th), Judge Mack, writing the opinion of the court, held the proceeding to be one in equity.

[2] From this consideration of the authorities it appears that confusion has arisen regarding the nature of the proceedings, and out of this confusion has come the conclusion in some of the cases that the rules of proof are necessarily those applied in a criminal case. The entire question being now open for consideration in the Circuit of Appeals and in the Supreme Court of the United States, I have ventured to express my opinion, although so far as this court is concerned I believe the practice to be settled by the Frankel Case, which must be taken as limiting the decision in the McCormick Case to the issues of disobedience and inability to perform subsequent to the entry of the summary order, which is to be taken as conclusive upon the question of ability to perform as of the date of its entry. If, in view of the failure to distinguish between civil and criminal contempt, the decision of this court in Re McCormick is not to be regarded as controlling to-day, I should have no hesitation in holding that this proceeding, being civil in its nature, is to be

governed by the rules prevailing in equity, where civil rules of proof. apply, although of course it should be added that in all such cases the chancellor proceeds with the utmost caution, lest injustice be done, but in no case, I believe, to the extent of inquiry into the merits of the order which has been disobeyed.

The motion is granted upon the authority of In re Frankel, and without inquiry as to the merits of the summary order, or the weight of the proofs upon which it was entered. The order of commitment should be drawn in the usual form, directing the respondents' confinement until they shall have complied with the order directing them to turn over the books found to be in their possession. It may also provide for a stay pending appeal to the Circuit Court of Appeals, provided such appeal is taken within 10 days from the entry of the order.