227 F.2d 528
 56 A.L.R.2d 661
 Frank C. JOHNSTON, Warden of Western State Penitentiary,
Pittsburgh, Pa., Petitioner,
v.
Honorable Rabe F. MARSH, United States District Judge for
the Western District of Pennsylvania, Alfred J.
Ackerman, Intervenor.
 No. 11713.
 United States Court of Appeals Third Circuit.
 Argued Nov. 4, 1955.
Decided Nov. 30, 1955.
 
 Wendell G. Freeland, Pittsburgh, Pa. (Herbert B. Cohen, Atty. Gen., of Pennsylvania, Frank P. Lawley, Jr., Deputy Atty. Gen., James F. Malone, Jr., Dist. Atty. of Allegheny County, S. Donald Wiley, Asst. Dist. Atty., Pittsburgh, Pa., on the brief), for petitioner.
 D. Malcolm Anderson, Jr., Pittsburgh, Pa. (Hubert I. Teitelbaum, First Asst. U.S. Atty., Pittsburgh, Pa., on the brief), for respondent.
 Marjorie Hanson Matson, Pittsburgh, Pa., for intervenor.
 Before GOODRICH, STALEY and HASTIE, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 The Court has before it a petition for writs of prohibition and mandamus directed to Judge Marsh of the United States District Court for the Western District of Pennsylvania. The petition will be denied for the reasons set out in the opinion below. United States ex rel. Ackerman v. Commonwealth of Pennsylvania, 133 F.Supp. 627.
 
 
 2
 Alfred J. Ackerman was convicted of various offenses in the state courts of Pennsylvania, sentenced to prison and was engaged in serving his sentence. He applied to the District Court for the Western District of Pennsylvania for a writ of habeas corpus alleging lack of due process in his trial. Included in his petition was a request that he be admitted to bail pending decision on the merits. The basis for this request was the allegation that he, as an advanced diabetic, was, under conditions of confinement, rapidly progressing toward total blindness. The district judge heard testimony upon the matter of Ackerman's physical condition. He admitted him to bail pending disposition on the merits and conditioned the admission to bail upon his going to and remaining in a private hospital. The condition was accepted and the prisoner was removed to the hospital.
 
 
 3
 On behalf of the petitioner, Johnston, Warden of the Western State Penitentiary, the argument is made that the district judge exceeded his authority in admitting the prisoner to bail and that the writs prayed for are the appropriate means of bringing the prisoner back into the custody of the state authorities where, it is claimed, he belongs.
 
 
 4
 That a United States Court has both the authority and the duty to listen to a state prisoner who claims that the state has not treated him with due process of law is not now open to doubt on the basis of existing legislation and court decisions. This Court went into the matter at some length in United States ex rel. Elliott v. Hendricks, 3 Cir., 1954, 213 F.2d 922, and we need not repeat here what was said there. Judge Marsh, therefore, had jurisdiction to hear the prisoner's case and to decide whether due process had been denied him. In argument a distinction was attempted between those cases where a prisoner's claim of lack of due process is one easy to deny and where it is not. The argument said that if the allegations made were such as to be, under old-fashioned pleading, subject to demurrer because no cause of action was stated, then the district court does not have jurisdiction.
 
 
 5
 We do not find the argument convincing. A court has jurisdiction and a duty to decide a case even though the pleader has failed to state a good cause of action.[1] The very submission of the question to the court involves the exercise of that court's jurisdiction unless perchance the particular court is one not qualified to deal with the subject matter of the complaint or has no jurisdiction over the person of the defendant.[2] In this case, however, as already indicated, the district court has jurisdiction of the subject matter of the complaint and the prisoner is within the court's authority because he invokes its power to give him his claimed constitutional rights.
 
 
 6
 Judge Marsh, then, did have jurisdiction over this piece of litigation. He must decide whether Ackerman makes out a case on his claim of lack of due process on which a United States court should give him relief. In the meantime, what are the judge's powers? If the prisoner was to be executed the day following the presentation of the petition to a United States court, the judge can order a stay of execution while he looks into the case.[3] During the argument in this Court the case was put of a prisoner who suffered a heart attack in the court room while his case was being argued. Counsel for the petitioner, Johnston, suggested that out of purely humanitarianism (shall we not say human decency?) the judge could properly send the prisoner to a hospital for immediate treatment. We think that this answer is the correct one but doubt whether judicial power depends on the existence of personal hardship. We think that the authority of the judge goes deeper than his sympathy for a human being in distress.
 
 
 7
 We think the basis of the judge's authority in this case is the fact that there is a prisoner before him[4] over whom he has jurisdiction and where his power to act judicially is expressly conferred by statute.[5] That being so, he had the authority which a court has with regard to such a case. Courts can set days for hearing. They can regulate the manner in which the trial shall be carried on and the hours at which witnesses and lawyers may be heard. They can 'fine for contempt, imprison for contumacy, enforce the observance of order, &c. * * *'[6] In other words, a court has a very wide authority over persons and business before it.
 
 
 8
 The statement is often made that the inferior courts of the United States are courts of limited jurisdiction. This is a truism in one sense. These courts are competent to act in such cases, and only in such cases, as the Congress, pursuant to the Constitution, assigns to them. And unless constitutional provisions stand in the way, the assignment may be varied at the will of Congress. But within the area of activity assigned to them, Federal courts are courts of full stature, and we may rightly look to common law concepts and precedents to see the scope of the implied or 'inherent' authority which the judicial office carries with it.[7]
 
 
 9
 If there is found specific statutory authority for admission to bail in such a case as this, such a provision would end the matter. The provision of the Code which comes closest to giving authority here is found in 62 Stat. 965 (1948), 28 U.S.C. § 2243 (1952). 'The court (in a habeas corpus proceeding) shall summarily hear and determine the facts, and dispose of the matter as law and justice require.' (Emphasis ours.) One court has indicated that similar language in this section's predecessor gave authority to grant a temporary release from confinement when justice required. Exparte Lee Fong Fook, D.C.N.D.Cal.1948, 74 F.Supp. 68, 72, reversed on other grounds, 9 Cir., 170 F.2d 245, certiorari denied, 1949, 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077; cf. Principe v. Ault, D.C.N.D.Ohio 1945, 62 F.Supp. 279, 283. Moreover, it has been held that under the current provision the court can make an order not involving a final disposition of the petition, Ex parte Sullivan, D.C.Utah 1952, 107 F.Supp. 514, 516 (order retaining jurisdiction of petition and giving petitioner ninety days to exhaust state remedies). However, under our view here we are not compelled to decide whether this vague provision, in itself, gives power to bail.
 
 
 10
 One of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable. It is clear that at common law courts had the inherent power to grant bail. See, e.g., Queen v. Spilsbury, (1898) 2 Q.B. 615, 620. This authority was exercised in habeas corpus cases pending decision on the merits. In re Kaine, 1852, 14 How. 103, 133, 55 U.S. 103, 133, 14 L.Ed. 345 (dissent); Barth v. Clise, 1870, 12 Wall. 400, 402, 79 U.S. 400, 402, 20 L.Ed. 393; 16 English & Empire Digest 268 (1923). Our Federal judiciary has consistently recognized that at common law this inherent power existed. See, e.g., United States ex rel. Carapa v. Curran, 2 Cir., 1924, 297 F. 946, 954, 36 A.L.R. 877; United States v. Evans, C.C.,1880, 2 F. 147, 152; Ewing v. United States, 6 Cir., 1917,240 F. 241, 248. Yet whether Federal courts have this authority has been the subject of considerable controversy. The principal cases are compiled in Principe v. Ault, D.C.N.D.Ohio 1945, 62 F.Supp. 279, 281. On apparently the only occasion at which this question has been presented to it, the Supreme Court, in dicta, said that it was unwilling to hold that circuit courts do not have this inherent power. Wright v. Henkel, 1903, 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948. We believe that the basic misconception in those decisions denying this authority lies in their view that since Federal courts have limited, statutory jurisdiction, their powers in proceedings involving this jurisdiction are necessarily limited and must be statutory. See Principe v. Ault, D.C.N.D.Ohio 1945, 62 F.Supp. 279, 282. This, as already indicated, is not our view of the matter.[8]
 
 
 11
 A judge having authority to act in a particular matter has, of course, the power to decide correctly or to make mistakes. Appellate courts exist to correct mistakes as they see them. But the fact that a court in the first instance decides a matter in a way which a court on appeal thinks incorrect is not a denial of the authority of the trial judge. We are not for a moment suggesting that the district court here did make a mistake. Neither are we saying that he was right. That point is not now before us. What we are deciding is that the court was acting within its jurisdiction. Since it was acting within its jurisdiction the writs prayed for are inappropriate because prohibition and mandamus only run against the judge when he has acted beyond his judicial authority or has refused to act within it.[9]
 
 
 12
 The petition will be denied.
 
 
 13
 HASTIE, Circuit Judge (concurring).
 
 
 14
 I join in the decision of the court and share the views expressed by Judge GOODRICH. However, I attach such importance to what is stated in the short paragraph of the opinion of the court which is supported by footnote 4 that I think it worthwhile, though certainly not essential, to elaborate in concurring opinion Judge GOODRICH'S succinct statement of the point.
 
 
 15
 Unique procedure characterizes the administration of the remedy of habeas corpus. When a court with jurisdiction of the subject matter receives a petition for habeas corpus which is not inadequate on its face, normal procedure is to issue a writ of habeas corpus, ordering the person who is detaining the petitioner to bring him before the court for hearing and decision whether he is unlawfully deprived of his liberty. The district court issued such an order here and in obedience thereto the state warden produced his prisoner.
 
 
 16
 At that juncture the body of the petitioner came under the lawful control of the district court. In legal contemplation that control continues pending decision whether to free the petitioner or to return him to state custody. During that period detention is by force of the writ of habeas corpus, and the antecedent detaining authority is superseded for the time being.
 
 
 17
 Normally, where the petitioner is a prisoner serving a sentence upon conviction of crime, the court before which he is brought by writ of habeas corpus directs the warden to hold him until the court can decide the case. But this procedure is not in derogation of the controlling concept that the body is being held pendente lite under authority and subject to order of the court which has issued the writ. Once this concept is recognized, it becomes clear that the particular interim disposition which the court makes of the body is a judicial function of that court to be discharged, absent any controlling statute, in the exercise of judicial discretion, all relevant circumstances considered. The court is under no ministerial duty to direct or permit the person who produces the petitioner to continue to hold him during this period.
 
 
 18
 True, the fact that a prisoner is under a final conviction and sentence precludes any presumption of innocence pending decision on habeas corpus. This is one important consideration militating very strongly against interim release from confinement. Moreover, the sensitivity of the states to federal interposition, however lawful, in cases involving state prisoners usually leads a federal court to choose the state warden as the officer who shall hold such a petitioner for the court just as he did under the state commitment. On the other hand, in the present case the grave exigency of the prisoner's health which impressed the district court constituted a substantial countervailing consideration. Thus, the district court was compelled to and did exercise its best judgment as to which of the opposing factors outweighed the others. This process resulted in a decision to allow the prisoner to be hospitalized on bail rather than to require his return to state prison pending decision.
 
 
 19
 Such considered exercise of judgment on a matter within judicial province is far removed from that arbitrary abuse of power which may be controlled by the extraordinary writs of prohibition and mandamus.
 
 
 20
 Judge GOODRICH and Judge STALEY have authorized me to state that they agree with what is said in this concurring opinion.
 
 
 
 [1]
 See, e.g., United States v. Shipp, 1906, 203 U.S. 563, 572, 27 S.Ct. 165, 51 L.Ed. 319, where in a habeas corpus case the Supreme Court rejected the argument that it had no jurisdiction because the allegations in the petition were merely a pretense
 
 
 [2]
 But even then, the court would have jurisdiction to decide whether it had jurisdiction. Cf. United States v. United Mine Workers of America, 1947, 330 U.S. 258, 289, 67 S.Ct. 677, 91 L.Ed. 884
 
 
 [3]
 United States v. Shipp, supra, 203 U.S. 573, 27 S.Ct. 165, 51 L.Ed. 319. The Court ruled that it had the power to order a stay, despite the absence of express statutory authority. This authority is now incorporated in the Code. 62 Stat. 966 (1948), 28 U.S.C. § 2251 (1952)
 
 
 [4]
 We are not required here to decide whether a court can properly grant bail without first securing custody of the prisoner. On August 12, 1955, Judge Marsh issued a writ of habeas corpus ordering the prisoner brought before him and the prisoner was so brought. The Code, 62 Stat. 965 (1948), as amended, 28 U.S.C. § 2241(c)(5) (1952), gives the court the authority to issue writs 'necessary to bring (the prisoner) into court to testify * * *,' without limitation as to the context of the testimony. When the prisoner came before the court, the Judge, under common law doctrine, gained custody of him, the authority of the writ superseding that of the original commitment. In re Kaine, 1852, 14 How. 103, 133, 55 U.S. 103, 133, 14 L.Ed. 345 (dissent); Barth v. Clise, 1870, 12 Wall. 400, 402, 79 U.S. 400, 402, 20 L.Ed. 393
 
 
 [5]
 62 Stat. 964 (1948), as amended, 28 U.S.C. § 2241 (1952)
 
 
 [6]
 United States v. Hudson & Goodwin, 1812, 7 Cranch 32, 11 U.S. 32, 3 L.Ed. 259 (inherent powers)
 
 
 [7]
 See the good discussion by Judge Dickinson in the case of In re Gannon, D.C.E.D.Pa.1928, 27 F.2d 362
 
 
 [8]
 For examples of nonstatutory powers, see notes 3 & 6 supra. We do not think that Supreme Court Rule 49, 28 U.S.C. and our Rule 15 deny the existence of inherent power. See In the Matter of Johnson, 1952, 72 S.Ct. 1028, 96 L.Ed. 1377. Instead, they merely regulate its exercise pending appeal from certain specified determinations. They are obviously inapplicable here
 
 
 [9]
 See, e.g., Ex parte Burtis, 1881, 103 U.S. 238, 26 L.Ed. 392; See also Ex parte Chicago, R.I. & Pac. R. Co., 1921, 255 U.S. 273, 275, 41 S.Ct. 288, 65 L.Ed. 631. We do not believe that the Court's interpretation of the All Writs Act, 62 Stat. 944 (1948), as amended, 28 U.S.C. § 1651(a) (1952), in Bankers Life & Cas. Co. v. Holland, 1953, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106, changes this fundamental principle