**SECURITIES AND EXCHANGE COMMISSION, Appellee,**

v.

**CHARLES PLOHN & CO., Appellants.**

No. 271, Docket 35348.

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1970.

Decided Oct. 20, 1970.

Kevin Thomas Duffy, Regional Adm'r, New York City (Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Jacob H. Stillman, Asst. Gen. Counsel, Alan Blank, Atty., Securities and Exchange Commission, Washington, D. C., Marvin G. Pickholz, Branch Chief, Robert D. Schulman, Atty., Securities and Exchange Commission, New York City, on the brief), for appellee.

Robert Arum, New York City (Michael Heitner, Mark N. Bloom, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, on the brief), for appellants.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

On August 27, 1970, the Securities and Exchange Commission filed suit in the United States District Court for the Southern District of New York against defendant Charles Plohn & Co., a broker-dealer registered with the Commission, and a suspended member firm of the New York Stock Exchange, charging it with violations of Section 8(c), 15(c)(2) and 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78h(c), 78o(c)(2) and 78j(b) (1964) and Rules 8c–1, 15c2–1 and 10b–5, 17 CFR 240.8c–1, 15c2–1, 10b–5 (1970), promulgated thereunder. The complaint alleges that since May 1970, the defendant has illegally hypothecated securities carried for the accounts of customers by pledging customers' securities as collateral for loans to the firm which exceed the aggregate indebtedness of all such customers with respect to their securities. The complaint further alleges that defendant has violated the anti-fraud provisions by failing to disclose to customers that its financial condition did not meet the requirements of Rule 325 of the New York Stock Exchange; that it had illegally pledged their securities, by virtue of representations that the securities were readily available for their use; that fully paid for securities were being diverted to and subject to the risks of defendant's business; and that defendant was unable to redeem these illegally pledged securities.

On the day that the complaint was filed, the Commission moved for a temporary restraining order, a preliminary injunction, and the appointment of a receiver. On the same day, after hearing the parties, Judge MacMahon indicated that, since the case had been fully presented, he was prepared without delay for further hearing to grant a preliminary injunction and appoint a receiver. Defendant's counsel, however, requested additional time to prepare a memorandum of law opposing the motion of the Commission. Judge MacMahon

thereupon issued a temporary restraining order and set the following day, August 28, for a hearing on the granting of a preliminary injunction and the appointment of a receiver.

On August 28, prior to the time set by Judge MacMahon for the hearing, defendant filed a notice of appeal from the August 27 order and sought to obtain a stay of that order from this court in support of an order to show cause made returnable on Monday, August 31. When defendant's counsel could not locate a judge of this court on that August Friday he secured from the Chief Deputy Clerk of the Court of Appeals, acting pursuant to Rule 27(a) of this Circuit's Rules Supplementing Federal Rules of Appellate Procedure, an endorsement on defendant's motion papers directing that "in the meanwhile [i. e. over the weekend], counsel for all parties will be expected to see to it that the status quo in the action is maintained."

Later the same day, despite the stay, Judge MacMahon proceeded with the scheduled hearing at which counsel for the Commission appeared but counsel for defendant did not. At the conclusion of the hearing Judge MacMahon granted a preliminary injunction and appointed a receiver. Defendant appeals from both this order and the order of August 27, granting the temporary restraining order and setting a hearing for the following day.

On Monday, August 31, Chief Judge Lumbard stayed the receiver from taking any action until the matter could be further heard by another judge designated for the purpose. On the following day, Judge Feinberg held a hearing on defendant's motion to stay the receiver pending appeal. On the basis of defendant's representation that it could free the illegally pledged securities by Friday of that week, Judge Feinberg continued the stay until Friday. At a further hearing on Friday, September 4, however, when it became apparent that defendant either would not, or could not, comply with the representations it had earlier given,

Judge Feinberg denied defendant's motion for a further stay.

At the outset, we must dismiss defendant's appeal from the order of August 27 because "[i]n a civil action a restraining order *qua* restraining order is nonappealable." 7 Moore's Federal Practice ¶ 65.07; Austin v. Altman, 332 F.2d 273 (2d Cir. 1964).

The questions remaining to be resolved concern the effect of the stay issued by the clerk of this court, and the propriety of the district court's entry of a preliminary injunction and its appointment of a receiver.

■ The stay obtained by defendant Plohn was obtained pursuant to Rule 27(a) of the Second Circuit Rules Supplementing the Federal Rules of Appellate Procedure. The Securities and Exchange Commission argues that the endorsement by the clerk of this court cannot operate as a stay because of supposed inconsistencies with Federal Rules of Appellate Procedure Rule 8. We disagree. Rule 27(a) of the supplemental rules is precisely what its title implies—supplemental to Rule 8. It attempts to provide for the situation, with respect to *all* motions seeking substantive relief, where "an appropriate showing of urgency" is made, e. g., where a judge of the court cannot be located. It does not give the clerk the power to decide these motions, but merely enables him to set a "hearing for a time not later than 24 hours after application to him during the period Monday to Thursday, or for Monday morning during the period after Thursday." Rule 27(a), *supra*. In order for this power to be meaningful, the clerk is given authority to "endorse on the motion papers a direction that the parties will be expected to maintain the status quo and such direction shall have the effect of a stay" until, and only until, the same motion can be heard by the court the following day. Rule 27(a) performs an important and even vital function in carrying out the purposes of Rule 8, since without Rule 27(a) a judge of this court would have to be present

twenty-four hours a day to insure that a party seeking a stay or injunction pending appeal under Rule 8 will not be irreparably prejudiced.

The further contention of the Commission that the stay is invalid because the August 27 order was not appealable is without merit. "It is axiomatic that a court order must be obeyed, even assuming its invalidity, until it is properly set aside." Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1964), cert. denied, 381 U.S. 925, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965). See United States v. United Mineworkers of America, 330 U.S. 258, 289–295, 67 S.Ct. 677, 91 L.Ed. 884 (1947); United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906).

Rule 27(a) itself accords the clerk's endorsement the status of a court order until the motion is heard, by declaring it to have the effect of a stay. Cf. Steinpreis v. Shook, 377 F.2d 282, 283 (4th Cir. 1967), cert. denied, 389 U.S. 1057, 88 S.Ct. 811, 19 L.Ed.2d 858 (1968).

The judge of the district court should have postponed the hearing until after the return date of the order to show cause. However, in this case we are not disposed to treat the judge's order as a nullity. In fact neither the parties nor the receiver took any action over the weekend. Chief Judge Lumbard stayed the receiver again on Monday, and after a hearing on Tuesday, Judge Feinberg extended the stay. On Friday, when it became apparent that defendant could not abide by the terms that it itself had set, the motion for a further stay was denied. No one was prejudiced by the action of the district court, since all parties did indeed maintain the status quo and appellant had his hearing on his motion to stay pending appeal. We would not be justified in reversing an action which we consider to have been correct merely in order to vindicate our power under Rule 27(a).

Appellant argues that the district court erred in appointing a receiver, since the facts presented did not justify resort to that extraordinary remedy. We cannot agree with defendant's optimistic review of the factual situation. It argues that on August 27 there were [only] thirty-two customers who had satisfied their debit balances due Plohn but whose stock remained as collateral for bank loans to Plohn. Additional facts put forward by the Commission indicate the context in which this clear violation of the statute must be viewed. A year before this action was brought, Plohn was fined for, among other things, illegal hypothecation of customers' securities. Upon learning of the firm's violation of the net capital rule, the New York Stock Exchange began supervision of the liquidation of Plohn. It was suspended from the Exchange on August 18 because of its failure to rectify the hypothecation problem. This meant, of course, and the Exchange so informed Plohn, that the Exchange's trust fund would no longer be available to satisfy any unpaid liabilities and that the Exchange would no longer oversee the liquidation of the company. This leaves Plohn's customers without protection unless such protection is provided by the action of the Commission. These are the undisputed facts. We need not even consider the additional allegations of the Commission, which appellant disputes. Under these facts the appointment of a receiver was clearly justified. Such a receivership is apparently the only remedy that will adequately protect the property of defendant's customers. At least, it was within the discretion of the district court so to find.

The appeal from the order of August 27 is dismissed.

The order of August 28 is affirmed.

FRIENDLY, Circuit Judge (dissenting):

Plohn had a considerably stronger case against the appointment of a receiver than the majority opinion indicates. According to its counsel, after the firm discovered in May, 1970, that it was in violation of the net capital rule, NYSE Rule

325, it took the initiative in bringing this to the attention of the New York Stock Exchange, presented a plan of orderly liquidation to the Exchange and the SEC, and has faithfully adhered to it. Its many branch sales offices were closed, all 130 registered representatives were discharged, and non-sales personnel were reduced from 150 to about 10. Most of the securities owned by the firm were sold, and the proceeds along with customers' payments of debit balances were used to cut bank loans from $14,-000,000 in May to $275,000 on August 27. In addition, the family of a general partner contributed $1,000,000 in new capital. Furthermore the securities of the 32 customers now illegally hypothecated had not been originally so; the illegality arose from payment of debit balances and Plohn's inability immediately to raise the $275,000 still owed. There was reason to think this problem would soon be solved by the sale of remaining securities or exchange seats, and Plohn asserts that none of the 32 customers had complained. With all this, there was a substantial question whether, despite Plohn's admitted violations, the expenses and other attendant problems of a receivership were justified, especially in light of this court's position that receivership is "an extraordinary remedy to be resorted to only where some injury to property can be avoided in no other way," Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 260 (2 Cir. 1963).

While this recital of what Plohn could have established is needed to place the problem in proper perspective, I do not dispute that an order appointing a receiver would have come within the wide discretion accorded a district judge if it had been made after a fair hearing and on due deliberation, requirements that are of peculiar importance precisely because of the wide discretion allowed him. Yet those elements were conspicuously lacking here.

The only issues properly before the district court on Thursday, August 27 were whether to enter a temporary restraining order and what date to set for the hearing of the SEC's motions for a preliminary injunction and the appointment of a receiver. Yet, according to the uncontradicted affidavit of Plohn's attorney, the judge said he had already "lined up a receiver" on the basis of a telephone call from the SEC and without awaiting counsel's arrival, and after a perfunctory hearing, of which no transcript was made, announced he was appointing one then and there. Although he then acceded to the protest of Plohn's counsel to the extent of setting a hearing for the next afternoon, that amount of time was totally inadequate in view of the lack of any emergency that required him to act on August 28 rather than let the matter go over for hearing in regular course on September 1 before another judge in the civil motion part. There was equally little justification for disregarding on August 28 the endorsement made by the clerk of this court in accordance with long standing practice now embodied in our Rule 27(a), on which counsel for Plohn had justifiably relied. The SEC made no showing that Plohn was going to divert assets over the weekend; its case rather was that the firm had put the securities of the 32 customers in places where no one save the banks could get at them. The majority recognizes that the receiver did nothing during the week-end, and there seems to have been nothing he could have done. It now appears that disposition of the exchange seats owned by members of the firm, one of the principal assets the receiver was to sell, can probably not be effected without lengthy litigation; while this may be an argument for a receivership, it indicates how little urgency there was about setting it in operation.

I fail to follow the logic that because Plohn was later able to obtain from judges of this court a temporary stay of action by the receiver, which was thereafter vacated, it suffered no prejudice from the denial of a proper hearing on the receiver's appointment. The issue on which Plohn was entitled to be heard was whether under all the circumstances

a receiver need be appointed or whether something less drastic would suffice. When the question of a stay came before Judge Feinberg, the issue was posed in the different terms of abuse of discretion, as it is before us. We should reverse this order not "merely in order to vindicate our power under Rule 27 (a)" but to show that in this circuit parties will not be divested of possession of their property even at the suit of the SEC, except in the direst emergency, without a full and fair opportunity to present their case. Cf. SEC v. Frank, 388 F.2d 486 (2 Cir. 1968).

The SEC's argument that Plohn should have been prepared for a hearing on August 27 because the staff had informed counsel on August 19 that it was seeking the agency's authority to institute this action leaves me exceedingly cold. If approval by the commissioners was only a rubber-stamp, as the argument seems to imply, that should scarcely have taken a week. While it would have been prudent for Plohn's counsel to begin getting his ducks in order so as to be prepared if the agency decided to act, he was not obliged to be ready, before being served with any papers, the very moment when the SEC approved the recommendations of the staff. Also, if the appointment of a receiver for Plohn had so little urgency that the SEC could take a week to act on the staff recommendation, it did not have to be pushed through the district court on the same day that the judge was first presented with an order to show cause, or even on the next day when Plohn's counsel was absent in justifiable reliance on the endorsement of the clerk of this court.

Apart from these principles of fundamental fairness, such procedings as were taken here are counter-productive in accomplishing anything for the creditors. Counsel for the receiver has advised us of the receiver's understandable reluctance to take important action while his status is under serious attack in this court. Hence instead of a delay of two business days there has been one of two months in the receiver's getting started

in any meaningful way. To be sure there might have been an appeal even if proper procedures had been followed, but we would then have been able to deal with it summarily.