**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**CHARLES PLOHN & CO., Defendant-Appellee,**
and
**Saul Edelman and William Livingston, Appellants.**

**Nos. 1054, 1055, Dockets 71-1497, 71-1498.**

United States Court of Appeals, Second Circuit.

Argued June 24, 1971.

Decided Sept. 3, 1971.

Howard Breindel, New York City (Paul J. Quinn, Jan D. Atlas, Regan, Goldfarb, Powell & Quinn, New York City, on the brief), for appellee Plohn.

Herbert A. Schectman, New York City (Mound, Belfer & Schectman, New York City, on the brief), for appellant Livingston.

Jay Goldberg, New York City, for appellant Edelman.

Before SMITH, HAYS and MANSFIELD, Circuit Judges.

HAYS, Circuit Judge:

On August 28, 1970 at the instance of the Securities and Exchange Commission the United States District Court for the Southern District of New York appointed a receiver to liquidate the assets of Charles Plohn & Co. in order to prevent diversion of its assets and "to pay all just claims of creditors" of Plohn. This court affirmed the district court's appointment of a receiver.[1]

The present controversy arose when the Plohn receiver sought to obtain an order of the district court authorizing him to sell the New York Stock Exchange seat owned by Alexander Edelman and the American Stock Exchange seat owned by William Livingston. Appellants filed opposing affidavits and moved for leave to intervene in the main action under Rule 24(a) (2) of the Federal Rules of Civil Procedure. The receiver's motion was granted and appellants' motion denied. We affirm.

Appellant Saul Edelman is owner of a security interest in the NYSE seat owned by his son Alexander Edelman, who purchased the seat with the proceeds of a loan of $204,515 made to him by Saul Edelman. When the seat was purchased, the Edelmans entered into an agreement, dated June 7, 1965 which provides:

"4. Saul [Edelman]· does agree to execute a voluntary payment subordination agreement on the usual form supplied by the New York Stock Exchange, whereby Saul's lien and claim upon the said New York Stock Exchange Membership of Sandy [Alexander Edelman], is subordinated *to claims of creditors* of Chas. Plohn & Co." (emphasis added).

Alexander Edelman became a general partner of Plohn in February 1968. In a partnership agreement of December 1, 1969 he agreed that the seat "shall be deemed an asset of the partnership so far as necessary for the protection of creditors" of Plohn.

Before moving in the district court for the sale of the Edelman seat, the receiver sought a determination from the Advisory Committee of the NYSE that sale of the Edelman seat was necessary

1. Securities & Exchange Commission v. Charles Plohn & Co., 433 F.2d 376 (2d Cir. 1970).

for the protection of Plohn creditors. The NYSE informed the receiver on October 2, 1970 that "the information presented is inadequate * * * to determine that the protection of creditors of Charles Plohn & Company requires the transfer" of the Edelman seat, but noted in a later letter that their decision "[did] not in any way preclude the disposition of that membership should the Court order such disposition." The principal reason for the NYSE's rejection of the request for sale of the seat was the absence of current certified financial statements.

Appellant William Livingston purchased his seat on the American Stock Exchange on March 20, 1970 for $150,000. Although Livingston did not execute a formal partnership agreement with Plohn, in filing an application with the NYSE, he asked to be approved as "an allied member of the New York Stock Exchange and a general partner" of Plohn and stated that he would be a "member of the American Stock Exchange representing Charles Plohn & Co." In a letter dated April 9, 1970, Livingston entered into an agreement with Plohn providing:

> "The undersigned William R. Livingston contributes to the partnership of Charles Plohn & Co. the use of his membership in the American Stock Exchange and hereby agrees that, insofar as it is necessary for the protection of creditors of the partnership, and subject to the Constitution and Rules of said Exchange, the proceeds of his membership shall be an asset of the partnership."

On September 4, 1970 Plohn secured a decision from an arbitration panel of AMEX that Livingston was a partner of Plohn in spite of his failure to execute a partnership agreement and that his AMEX seat "should be an asset of Charles Plohn & Co. insofar as necessary for the protection of creditors of the partnership." The arbitrators denied the request to sell the seat immediately on the ground that the evidence failed to establish the need for an immediate sale.

I.

■ Appellants argue that the district court erred in concluding that sale of the Edelman and Livingston seats is necessary for the protection of Plohn's creditors. We find, however, that the record contains ample evidence to support the finding that, in view of the unavailability of any other assets for immediate liquidation in the amount required, the receiver faces a critical short-term solvency problem requiring sale of the seats. Marketable securities owned by several Plohn partners as well as the AMEX seat of Charles Plohn, Jr. have already been sold by the receiver and the proceeds used to retire a bank loan and to release illegally hypothecated securities. Although Plohn still possesses a considerable inventory of securities, most of these are not presently transferable either because of contractual restrictions or restrictions imposed by the Securities Act of 1933. The receiver submitted financial statements prepared by his accountants showing that the current liabilities of Plohn as of December 31, 1970 exceed its current assets (including the seats valued at $305,000.00) to be realized by June 30, 1971 by $22,103. Without the seats, the deficit in current liabilities over current assets was $327,103.00. There is no reason why Plohn's creditors, who with few exceptions have not received any payments since the appointment of the receiver on August 28, 1970, should continue to wait until the restricted securities can be liquidated. The district court was justified in concluding that sale of the seats is necessary to meet Plohn's current cash needs.

■ Appellant Edelman's argument that, under the NYSE Constitution, the word "creditors" appearing in his subordination agreement pertains only to public customers and not to creditors generally is without merit. The NYSE

Constitution, Rules and Regulations,[2] refer to "customers" in those provisions which are intended to be confined to customers. It is clear that the term "creditors" is to be given its usual meaning and is not limited to public customers of member firms.

■ Both appellants argue that the doctrine of marshalling of assets requires that the receiver sell all of Plohn's other assets, including its restricted securities, before he can sell the seats at issue. That doctrine has no application in view of the agreements signed by the Edelmans and Livingston pledging their seats as assets of Plohn when necessary for the protection of its creditors. Both appellants subordinated their interests in the seats to the rights of creditors and cannot now argue that these creditors should be required to wait for payment in order to protect appellants' interests.

We also reject appellants' contention that the district court erred in denying appellants' request for an evidentiary hearing in addition to the hearing of March 11, 1971. The district court was within its discretion in deciding the factual issues on the basis of the ample affidavits submitted by the appellants and the receiver.

## II.

■ Appellants suffered no prejudice from the denial of their motion to intervene inasmuch as they were given a full and complete opportunity to be heard in opposition to the motion to sell the seats. They were served with notice of motion, they were permitted to file papers, submit proof, and be heard on oral argument. Since we affirm the district court's finding of necessity to sell these seats, no interest would be served by now permitting appellants to intervene as parties in the plenary action.

The order of the district court is affirmed.

---

2. NYSE Constitution, Article XI, Sec. 3, par. Fifth, Article X, Sec. 8; NYSE Rule 325 (E) & (F).