## UNITED STATES v. FIALA.

## UNITED STATES v. BUSCHMANN.

### No. 17466; No. 16048.

United States District Court
W. D. Washington, S. D.

United States District Court
D. Oregon.

Dec. 19, 1951.

No. 17466:

Henry L. Hess, U. S. Atty., and John R. Brooke, Asst. U. S. Atty., both of Portland, Or., for plaintiff.

Dellmore Lessard, of Portland, Or., for defendant.

No. 16048:

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for plaintiff.

Robert O. Beresford, Wright, Booth & Beresford, of Seattle, Wash., for defendant.

McCOLLOCH, District Judge.

In my judgment, there is no substantial question for consideration by the appellate court in these cases. That is why I have denied bail on appeal. There is no other ground for granting bail on appeal.[1]

For some time, I have been interested in bail practices in the Federal Courts, and lately the Communist cases in New York and Los Angeles have prompted a great deal of discussion.

The subject divides into two heads: bail before trial, sometimes referred to as appearance bail, and bail after conviction, often referred to as bail on appeal. There is a constitutional right (qualified) to bail before trial[2], whereas the right to bail after conviction, and pending appeal, is by Rule only, regardless of contrary intimations in recent decisions.

Following the re-making of the Court of Appeals in the Ninth Circuit 1932–  , the practice of the appellate judges was loose and, I may say, not in accord with the pertinent Supreme Court rule.

In my own District of Oregon, where we have little serious crime, compared with other districts, the Circuit Court of Appeals rejected the District Court's judgment as to bail, as early as 1939. Mazurosky v. United States, 9 Cir., 100 F.2d 958.

In this case the jury had found the defendant guilty of abetting the despicable crime of performing fake cataract operations on ignorant people, mostly old people and country folk. One of the Circuit Judges reduced bail on appeal to $1,000, although bail had previously been set, on recommendation of the United States Attorney and the Grand Jury, at $7,500. The case was reversed on the merits—a decision which the Court of Appeals must have had in view at the time it made the radical reduction in bail. The defendant, however, did not have the same confidence in his ability to establish his ultimate innocence, as did the Court of Appeals, for later he pleaded guilty and served a term in the penitentiary.

Note the action of the Court of Appeals in this case: not only did it reduce the amount of bail fixed by the trial judge, it fixed the amount of the new bail. I will

1. Rule 46(a) (2) Fed.Rules Crim.Proc., 18 U.S.C.A.

2. 8th Am.U.S.Const.

refer later to the right of appellate judges to fix the amount of bail *before trial.* No doubt they have this right on appeal; that is in the exercise of appellate jurisdiction. Query: Do they have the right to fix the amount of bail to be given in a trial court, any more than they have the right to impose sentences?

By 1947, the practice of the Ninth Circuit Court of Appeals judges in overruling District Judges re bail on appeal had become so general, the subject was sharply discussed at the Circuit Judicial Conference in that year.

Judge, now Chief Judge, Leon R. Yankwich of Los Angeles read a comprehensive paper, in which he called names and dates; and I think it only fair to say that thereafter the activity of the appeals judges in this field abated to a considerable extent, for several years. Chief Judge Yankwich's notable paper, "Release on Bond by Trial and Appellate Courts," is to be found in 7 F.R.D. 271.

### The Bridges Case

The most recent instance of appellate repudiation of trial court action re bail on appeal is the Bridges case.

Judge Harris had imposed a sentence of five years' imprisonment, and had granted bail on appeal. That was April 10, 1950. Three months later we became involved in Korea and, because the convicted defendant was throwing his labor union strength toward obstruction of desperately needed shipments for the war zone, Judge Harris, on motion of the Government and after hearing, revoked Bridges' bail, and remanded the defendant to custody. This decision was immediately appealed and a sharp reversal followed.[3] The Government quit at this stage and did not carry the matter, as it seemed it might have done, to the Supreme Court.

Since that time, Bridges has been most active in provoking disorder. He has traveled widely and divided his words about evenly between vilification of the Judge, the jury and the witnesses at his trial, and brazen declamation, favorable to our deadly Communist enemy.[4]

Many have asked: How can this be? The usual condition of bail is that the defendant, both before and after conviction, shall not leave the District, without permission.[5] This restriction is enforced generally against persons convicted of other types of crime, and the question has been asked—and not answered—why a defendant of Bridges' type should be extended special favors.

### The Heart of the Problem

Here I want to speak of what I think is the heart of the bail problem in the Federal Courts—slowness of the appellate courts in deciding criminal cases.

The defendant Bridges was convicted on April 10, 1950, and I understand all the briefs on appeal have not been filed.

Judge Learned Hand pointed the path of duty to the appellate courts in the New York Communist cases. Judge Hand had joined in reversing Judge Medina's denial of bail on appeal; having done so, and plainly in recognition of his duty to expedite decision, Judge Hand sat into the hot New York summer, to grind out his decision of affirmance.[6]

Where a person has been found guilty of a serious crime and has been enlarged on bail, over objection by the Judge who

---

3. Bridges v. U. S., 9 Cir., 184 F.2d 881.

4. In Portland, Oregon, Bridges said he had been tried by "a lousy judge * * * the whole case was shot through with stool pigeons, perjurers and liars." In a radio address while in Hawaii, Bridges attacked the judge, jurors and prosecutors in his case, stating that he "would never spend a day in jail". The jurors were referred to as "jackals and hyenas".

5. The Manual for United States Commissioners for many years contained the explicit statement that defendants must remain within the district until final judgment.

This is not in the revised Manual. It was dropped out apparently because the short form of appearance bond at the back of the Federal Rules of Criminal Procedure does not contain the restriction against travel beyond the district.

6. U. S. v. Dennis, 2 Cir., 183 F.2d 201.

tried him, grave responsibility lies on the appellate court to expedite the decision of the case. The case should be given right of way, and I would say that a year was a long time for the decision in any case, under such circumstances.[7]

I say further that where an appellate court has enlarged a defendant of the Bridges type, it has imposed on itself the obligation to police the activities of the defendant, pending decision of his case. The trial judge cannot be expected to do this; he feels that he has been ousted of jurisdiction. Technically, arguments can be made that the duty is still the trial judge's, but the fact is, having been once reversed on the question of bail, he is not going to risk a second reversal by his superiors.

### Bail Before Trial

The differences that have recently developed between District Judges in Los Angeles and Appellate Judges, in the Smith Act [8] cases pending in that District, have provoked consideration of the bail question in many new aspects.

The Los Angeles District Judges have adhered to the steadfast view that nothing less than $50,000 bail for each defendant in the pending cases will insure his or her presence at all stages of the trial; this, in view of the default of four out of the eleven convicted New York Communists, on bail granted by Justice Jackson,[9] reversing the Second Circuit Court of Appeals, which had canceled bail, following Eisler's escape, and the outbreak of the Korean War. The long and short of it is, that the collective judgment of the Second Circuit judges as to what might be expected in the New York cases turned out to be better than the separate judgment of the esteemed Justice who reversed them.

In view of this happening, and of their residence in the Los Angeles area, and their intimate knowledge of the "Powers of Darkness" that pervade the area, the District Judges at Los Angeles are not constrained willingly to yield their judgment, as to the proper amount of bail, to that of non-resident appellate judges.

United States District Judge William C. Mathes has written two strong opinions [10] in explanation of his action in requiring $50,000 bail for each defendant in these cases. The Supreme Court, unjustly, it seems to me, seemed to criticize Judge Mathes, who is known widely as one of our strong judges, for fixing the same bail in all the cases.[11] The Court of Appeals has reduced the bail to $5,000 and $10,000 per person.[12] It remains to be seen whose judgment future events will vindicate.

It remains also for a future time, to discuss the jurisdiction of Federal appellate courts to fix the amount of bail before trial. They can reverse a trial judge's determination, but can they dictate what his judgment shall be?[13]

7. The median time for disposing of civil cases in Federal District Courts is nine months. Criminal cases are disposed of faster.

8. 18 U.S.C.A. § 2385.

9. Williamson v. U. S., 2 Cir., 184 F.2d 280.

10. U. S. v. Schneiderman, D.C., 102 F. Supp. 52; U. S. v. Spector, D.C., 102 F.Supp. 75.

11. Stack v. Boyle, 1951, 342 U.S. 1, 72 S.Ct. 1.

12. Stack v. U. S., 9 Cir., 193 F.2d 875.

13. Among the illustrative forms which accompany the Federal Rules of Criminal Procedure is Form 17, Appearance Bond. This form has been printed and circulated by the Administrative Office, and the form is now in general use in the United States Courts. The form does not contain the usual provision restricting the defendant to the district of his indictment.

On February 29th, and after the above was written, United States District Judge Foley at Reno, Nevada, sentenced one Remmer after conviction of income tax evasion to imprisonment for five years and to pay a fine of $20,000. The trial lasted for three months and attracted a great deal of public interest. *Judge Foley denied bail on appeal, but his order was reversed by a panel of Court of Appeals Judges after a brief oral hearing. The Court of Appeals fixed bail at $50,000. It did not state the "substantial question * * * (to) be determined by the appellate court".* Rule 46(a) (2), Fed. Rules Crim.Proc. 18 U.S.C.A.