**UNITED STATES of America ex rel. Frank SULLIVAN and John Ryan, Relators,**

v.

**Louis AYTCH, Superintendent of Philadelphia County Prisons, Respondent.**

**Civ. A. No. 73–311.**

United States District Court,
E. D. Pennsylvania.

Feb. 20, 1973.

television systems to originate programming.

Leonard Sagot and John Poserina, Philadelphia, Pa., for plaintiff.

Arlen Specter, Dist Atty., by Judith Dean, Asst. Dist. Atty., Stanley W. Bluestein, D. Donald Jamieson, Philadelphia, Pa., Israel Packel, Atty. Gen. of Pa., by Philip Berg, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

In a courtroom packed with the conflicting emotional reactions which the present school teachers strike in Philadelphia has engendered, this court held a hearing to determine whether the leaders of the Union, Frank Sullivan and John Ryan, who are presently serving a sentence of six months to four years in the Philadelphia County Prison for violating an order of the Court of Common Pleas, should be released on bail pending disposition of their appeals in the State Court System. The Court takes judicial notice of the school teachers strike and the irreparable injury which it must be inflicting on its innocent victims—the public school students in Philadelphia. We hope and pray that before this opinion is filed the strike will be settled. The determinations in this opinion will not, however, settle the strike. This Court must simply determine whether the Relators' Eighth or Fourteenth Amendment rights have been violated under circumstances which permit this Court to grant habeas corpus relief.

The instant petition was filed in this Court on Tuesday, February 13, 1973. On that same date, this Court issued the following Order:

### ORDER

AND NOW, this 13th day of February 1973, after consideration of relators' petition for a writ of habeas corpus, it is

ORDERED that the respondent, Louis Aytch, show cause why the writ should not be granted, said answer to be filed in this Court and a copy thereof served on the Relators and all parties hereinafter named on or before 1:00 P.M. Thursday, February 15, 1973.

ORDERED that the respondent, Louis Aytch, make a return certifying the true cause of the detention.

. ORDERED that the petition is set for hearing on the merits on February 16, 1973 at 10:00 A.M. in Courtroom No. 13 of this United States Courthouse, 9th and Market Streets, Philadelphia, Pennsylvania.

ORDERED that counsel for relators or their authorized representative be and is hereby authorized to make service of the petition herein and a copy of all other papers which have been filed of record in this Court, said service to be made before 10:00 A.M. on February 14, 1973 on the respondent, the President Judge of the Court of Common Pleas for the County of Philadelphia, the District Attorney of Philadelphia, and the Attorney General of the Commonwealth of Pennsylvania, and the Board of Education of the School District of Philadelphia, and the City Solicitor of Philadelphia.

ORDERED that proposed Findings of Fact and Conclusions of Law, with briefs, in support thereof, shall be filed, in duplicate, by all parties with respect to the merits of the petition on or before 5:00 P.M. Thursday, February 15, 1973.

On Wednesday, February 14, 1973 this Court, after a hearing, entered a Memorandum and Order denying Relators' petition for bail pending the hearing and determination of the matter on the merits. There is presently pending in the Circuit Court of Appeals a petition for a Writ of Mandamus and an appeal in connection with this Court's Order of February 14, 1973.

At the hearing which took place on February 16, 1973 both Frank Sullivan and John Ryan were present. They were represented by Leonard M. Sagot, Esq. and John Poserina, Esq. Judith Dean, Esq., Assistant District Attorney, presented the Commonwealth's case urging the Court to deny the writ. Also appearing in opposition to the Writ was Stanley Bluestein, Esq., representing the President Judge of the Court of Common Pleas. Philip J. Berg, Esq. appeared on behalf of the Attorney General, responding solely to the Relators' allegations relating to the unconstitutionality of Section 1003 of the Public Employe Relations Act of 1970 through its counsel. The School District of Philadelphia, through its counsel, Vincent J. Salandria, Esq., urged the Court by letter to "grant the petitioners reasonable bail." The City Solicitor of Philadelphia, Martin Weinberg, Esq., advised the Court by letter that the District Attorney's Office would file an answer and argue the matter.

At the bar of the Court all the parties agreed that the Relators were found guilty of criminal contempt and that the relevant facts are as follows:

Relator John Ryan, chief negotiator of the Philadelphia Federation of Teachers, Local 3, AFT, AFL–CIO, and Relator Frank Sullivan, President of the Philadelphia Federation of Teachers, Local 3, AFT, AFL–CIO, are citizens of the United States and the Commonwealth of Pennsylvania. On January 4, 1973, the Board of Education of the School District of Philadelphia filed a Complaint in Equity pursuant to Section 1003 of the Public Employe Relations Act of 1970, 43 P.S. § 1101.1003, in the Philadelphia Court of Common Pleas as of January Term, 1973, No. 558, seeking to enjoin Relators and twenty-six (26) other named defendants including the Philadelphia Federation of Teachers from engaging in a work stoppage within the Philadelphia School District during the school year scheduled to commence in September 1972 and end on June 30, 1973.

On January 5, 1973 the Court, through the President Judge, sustained

the defendants' Preliminary Objections challenging, *inter alia,* the jurisdiction of the Court, and then relisted the complaint for additional hearing on January 8, 1973. (See Exhibits P–1 and P–2.) The order in connection with the Preliminary Objections reads as follows:

AND NOW, to wit, this 5th day of January, 1973, defendants' preliminary objections raising the question of jurisdiction is sustained to the extent it deals with the jurisdiction of the Court in this case to grant an injunction before a strike actually occurs.

The complaint is listed for hearing on Monday, January 8, 1973, in Room 653, City Hall.

On January 8, 1973 a strike occurred by the Philadelphia Federation of Teachers against the Philadelphia School District. On January 11, 1973 the Court issued an Injunction pursuant to the Complaint of January 4, 1973 and § 1003 of the Public Employe Relations Act of 1970, enjoining the defendants from engaging in a strike or work stoppage for the remainder of the 1972–1973 school year. (See Exhibit P–3.) It was agreed by all parties that the injunction be considered a final order. On January 12, 1973, the defendants filed an appeal to the Commonwealth Court of Pennsylvania, said appeal being docketed as No. 46 CD 1973. In the appeal to the Commonwealth Court from the Order of January 11, 1973, defendants challenged the jurisdiction of the lower court to entertain the Complaint in Equity subsequent to sustaining Preliminary Objections on a jurisdictional basis, and said appeal also challenged the legal propriety of the injunction in accordance with § 1003 of the Public Employe Relations Act of 1970. The parties to the appeal have filed briefs, and oral argument on the appeal was heard by the Commonwealth Court on January 29, 1973. The Court took the matter under advisement, and at the present time the parties are presently awaiting its decision. (See Exhibit P–4.) On January 18, 1973 the Philadelphia Board of Education filed two ap-

plications, one for indirect criminal contempt against all named defendants in the original complaint and the other citation for civil contempt. Preliminary objections were filed to the application for civil contempt citation. The Court determined that the indirect criminal contempt citation should issue and that the civil contempt citation be held in abeyance and ordered the District Attorney to prosecute the indirect criminal contempt citation. (See Exhibit P–5.) On January 18, 1973, the Relators appeared before the Court of Common Pleas for their preliminary arraignment with respect to the indirect criminal contempt charges brought against them. At that time, the President Judge of the Court of Common Pleas ruled that the Act of 1931, the Indirect Criminal Contempt Act, controlled the procedure before the Court. On January 18, 1973, the Relators and all other Defendants were arraigned and pled not guilty to the criminal contempt bills lodged against them, and the President Judge of the Court of Common Pleas afforded the Relators bail pending trial and permitted them to sign their own bond pending the commencement of the trial. (See Exhibit P–6.) On January 22, 1973, prior to the commencement of the trial by jury, the President Judge of the Court of Common Pleas granted Defendants' Motion for Severance and ordered that Relators Frank Sullivan and John Ryan and the Philadelphia Federation of Teachers be tried separate from the remaining named defendants. (Exhibit P–7(a), (b) and (c).) Prior to and throughout the course of the trial the Court ruled that the criminal trial of Relators would be governed and controlled by the rules and procedures specifically set forth in the Indirect Criminal Contempt Act of 1931, 17 P.S. § 2048. (See Exhibits P–8(a) and (b).) On January 22, 1973 the trial court denied Defendants' Motion to Quash the application for citation for Indirect Criminal Contempt, which Motion alleged in part that the Court was without jurisdiction to issue the injunction of

January 11, 1973, thus rendering the application for Indirect Criminal Contempt void *ab initio*. (See Exhibits P–9; P–10(a), (b) and (c).) The trial court in its opening statements to the jury and throughout the duration of the trial repeatedly ruled that it had a narrow issue before it for decision. The issue according to the court was merely whether or not an Order of the Court had been issued, validly served and then violated. The Court repeatedly indicated any evidence and/or arguments beyond that scope would be immaterial and irrelevant. On January 25, 1973 the jury returned a verdict of guilty against Relators and the Philadelphia Federation of Teachers. (See Exhibit P–11.) Upon receipt of the verdict of guilty, the trial court specifically stated that the indirect criminal contempt proceedings were governed by Pennsylvania Rules of Criminal Procedure, and thus afforded the Defendants a right to file Motion for New Trial and Arrest of Judgment within seven days. The trial court further ruled that defendants would be permitted to remain on one thousand dollars ($1,000) bail (release on their own recognizance). The deputy district attorney who prosecuted the case on behalf of the school board, Robert Gabriel, Esq., voiced no objections to the continuance of bail on personal recognizance. (See Exhibit P–12.) On February 8, 1973 the trial court denied Defendants' Motion for New Trial and Arrest of Judgment. On February 9, 1973 the court sentenced Relator Frank Sullivan to pay a fine of five thousand dollars ($5,000) and undergo a term of imprisonment of not less than six (6) months and not more than four (4) years. At the same time the Court ordered Relator John Ryan to serve a term of imprisonment of not less than six (6) months and not more than four (4) years. (See Exhibits P–14, 15 and 16.) In sentencing Relators, the Court specifically held that § 2048 of the Indirect Criminal Contempt Act of 1931, 17 P.S. § 2048, was inapplicable to the sentencing of Relators and that the Court would sentence pursuant to the Public Employe Relations Act of 1970, Section 1007 of which reads as follows:

In the event any public employee refuses to obey an order issued by a court of competent jurisdiction for a violation of the provisions of this article, the punishment for such contempt may be by fine or imprisonment in the prison of the county where the court is sitting or both in the discretion of the court.

[43 P.S. 1101.1007.] Section 2048 of the Indirect Criminal Contempt Act of 1931, 17 P.S. § 2048 specifically provides that punishment for Indirect Criminal Contempt shall not exceed a fine of one hundred dollars ($100) and/or fifteen (15) days' imprisonment. (See Exhibit P–18.) Section 1009 of the Public Employe Relations Act of 1970 provides as follows:

In fixing the amount of the fine or imprisonment for contempt, the court shall consider all the facts and circumstances directly related to the contempt including but not limited to (i) any unfair practices committed by the public employer during the collective bargaining processes; (ii) the extent of the wilful defiance or resistance to the court's order; (iii) the impact of the strike on the health, safety or welfare of the public, and (iv) the ability of the employe organization or the employe to pay the fine imposed. (See Exhibit P–19.)

Immediately subsequent to sentencing, counsel for Relators requested the Court for a Supersedeas of its Order and to continue and/or set bail pending appeal. The Court denied said request for Supersedeas and for bail pending appeal. Deputy District Attorney Robert Gabriel informed the Court that his office took no position with respect to the continuance of bail pending appeal. Relators were then remanded forthwith to the custody of the Philadelphia County Sheriff and taken to the Philadelphia House of Corrections where they are presently incarcerated. (See Exhibit

P–20, (a) and (b).) On February 9, 1973, Relators filed a Petition for Special Supersedeas and Stay of Execution of Sentence Pending Appeal in the Supreme Court of Pennsylvania, said petition being docketed as 313 Miscellaneous Docket No. 19. In a letter dated February 9, 1973 to the Honorable Benjamin R. Jones, Chief Justice of the Supreme Court of Pennsylvania, the District Attorney for the City of Philadelphia, Arlen Specter, Esq., informed the Supreme Court that his office did not object to the setting of bail for Relators pending appeal, on the grounds that the Relators "are entitled to equal consideration afforded to others who are convicted in a criminal court." On February 12, 1973 the Supreme Court of Pennsylvania informed counsel for Relators that their Petition for Special Supersedeas and Stay of Execution of Sentence Pending Appeal was denied. As a consequence thereof, Relators remain incarcerated in the House of Correction but are permitted to be released from 10:00 A.M. to 4:00 P.M. Monday to Friday in custody of two guards. Relators are two officers of the Philadelphia Federation of Teachers with no previous criminal history and of undisputedly high standing in the community. (See Exhibits P–23 and 24.) Throughout the duration of the criminal trial, which proceeded as an indirect criminal contempt trial, Relators were released on their own recognizance and appeared at each and every stage of the proceeding. Relators presently maintain, and have maintained throughout their adult life, residency in the City of Philadelphia, and there is no dispute that they will not leave the jurisdiction of the Court pending disposition of the numerous legal issues in the instant matter.

This is a Petition for a Writ of Habeas Corpus. There is no question that this Court has jurisdiction in this matter. 28 U.S.C. § 2254 specifically provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[1]

There is no question that the Relators are in custody pursuant to the judgment of a State court and that they have alleged that they are in custody in violation of the United States Constitution. However, before proceeding to the determination of the issue of whether their custody is in violation of the Constitution of the United States, we must consider the cautions specifically set forth in subsection (b) of Section 2254 that "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall *not* be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."[2] In addition, subsection (c) of Section 2254 provides that "An applicant shall not be deemed to have exhausted the remedies available in the

---

1. 28 U.S.C. § 2254(a) provides:

 (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

2. 28 U.S.C. § 2254(b) provides:

 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted *unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.* (Emphasis added.)

courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."[3]

There is no question that subsections (b) and (c) of Section 2254 mean what they say. Our United States Supreme Court has said in Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971):

It has been settled since Ex parte Royall, 117 U.S. 241 [6 S.Ct. 734, 29 L.Ed. 868] (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. See, e. g., Nelson v. George, 399 U.S. 224, 229 [90 S.Ct. 1963, 26 L.Ed.2d 578] (1970); Irvin v. Dowd, 359 U.S. 394, 404–405 [79 S. Ct. 825, 3 L.Ed.2d 900] (1959); Ex parte Hawk, 321 U.S. 114 (1944). The exhaustion of state remedies doctrine, now codified in the federal habeas statute, 28 U.S.C. § 2254(b), (c), reflects a policy of federal-state comity, Fay v. Noia, 372 U.S. 391, 419–420 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963); Bowen v. Johnston, 306 U.S. 19, 27 [59 S.Ct. 442, 83 L.Ed. 455] (1939), "an accommodation of our federal system designed to give the State the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Wilwording v. Swenson, [404 U.S.] 249, 250 [92 S. Ct. 407, at 408, 30 L.Ed.2d 418] (1971). We have consistently adhered to this federal policy, for "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Darr v. Burford, 339 U.S. 200, 204 [70 S.Ct. 587, 94 L.Ed. 761] (1950) (overruled in other respects, Fay v. Noia, *supra*, [372 U.S.] at 435–436 [83 S.Ct. at 847–848]). It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. See, e. g., Wilwording v. Swenson, *supra*, [404 U.S.] at 249 [92 S.Ct. at 407]; Roberts v. LaVallee, 389 U.S. 40, 42–43 [88 S.Ct. 194, 19 L.Ed.2d 41] (1967); Brown v. Allen, 344 U.S. 443, 447–450 [73 S.Ct. 397, 97 L.Ed. 469] (1953).

 Furthermore it is the law of the Supreme Court of the United States that federal habeas corpus may not be used in lieu of an appeal itself, since this would permit the use of habeas corpus "as a matter of procedural routine to review state criminal rulings." Brown v. Allen, 344 U.S. 443, 448–449, n.3, 73 S. Ct. 397, 97 L.Ed. 469 (1953); Williams v. Oriscello et al., 441 F.2d 1113, 1114 (3d Cir. 1971).

 Now, have the Relators exhausted the remedies available to them in the State Court? Let us examine each of the allegations set forth by the Relators as grounds for the issuance of the Writ. Relators' first allegation is as follows:

The trial court was without jurisdiction to issue the Order of January 11, 1973 and to subsequently entertain proceedings alleging contempt of that Order in that it had sustained preliminary objections to its jurisdiction to entertain the Complaint upon which the Order was issued on January 5, 1973.

The counsel for Relators presented to this Court a copy of their "Brief for Appellants" in connection with an Appeal taken by Relators from the Order of the Common Pleas Court in which the same legal question is presented to the Commonwealth Court of Pennsylvania (No. 46 C.D.1973—William Ross, President, Board of Education, School District of Philadelphia, et al., Appellees v. Philadelphia Federation of Teachers, Local 3, et al., Appellants). The facts as

---

3. 28 U.S.C. § 2254(c) provides:

 (c) *An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.* (Emphasis added.)

agreed to in this proceeding state that the appeal was taken to the Commonwealth Court, the parties have filed briefs with the Commonwealth Court, that oral argument was had in the Commonwealth Court on January 29, 1973, and that the parties are presently awaiting the decision of the Commonwealth Court. Also, paragraph 3 of Relators' Petition provides:

That Petitioners took an immediate Appeal to the Commonwealth Court for the Commonwealth of Pennsylvania subsequent to the entry of said Order of January 11, 1973, and oral argument was held by said Court on January 29, 1973. In said Appeal, Defendants have challenged both the jurisdiction of the Court and the propriety of said Order pursuant to Section 1003 of the *Public Employe Relations Act of 1970.* The decision of the Commonwealth Court in said Appeal is still pending.

It is, therefore, apparent, and we must find that the Relators have not exhausted the remedies available to them in connection with this alleged violation of their rights under the United States Constitution.

■ Let us next examine the Relators' second allegation:

The sentence pursuant to which Petitioners are presently being restrained and imprisoned is illegal on its face in that it is in complete derogation of the sentencing procedures set forth in the Indirect Criminal Contempt Act of 1931, 17 P.S. § 2048, which section specifically provides that punishment for indirect criminal contempt may not exceed One Hundred Dollars ($100.00) or imprisonment not exceeding fifteen (15) days in jail or both. In the instant proceedings, Petitioners were sentenced to a term of imprisonment not less than six (6) months and not more than (4) years in duration. If the trial judge had sentenced Petitioners in accordance with the provisions of

17 P.S. § 2048, Petitioners would have an absolute right to bail pending appeal under Rule 4004(c) of the Pennsylvania Rules of Criminal Procedure. Accordingly, said sentencing is in violation of the rights guaranteed to Petitioner by the Eighth and Fourteenth Amendments to the United States Constitution.

This allegation claims that the sentence is illegal, because the Indirect Criminal Contempt Act of 1931, 17 P.S. § 2048, limits the sentence which the trial judge should have imposed to fifteen days and that the Relators received a sentence of six months to four years. At the sentencing the Court said: ". . . under the Public Employe Relations Act, upon refusal to obey the Order, this Court has jurisdiction to punish you for contempt by fine or by imprisonment in a county prison in the discretion of the Court. The Act of 1931 dealing with punishment . . . we hold inapplicable." And in its answer, the Court avers that it sentenced pursuant to Section 1007 of the Pennsylvania Public Employe Relations Act which provides:

In the event any public employee refuses to obey an order issued by a court of competent jurisdiction for a violation of the provisions of this article, the punishment for such contempt may be by fine or imprisonment in the prison of the county where the court is sitting or both in the discretion of the court.

The Relators were found guilty by a jury on January 25, 1973. The sentence was imposed on February 9, 1973. In sentencing the Relators, the trial judge said: "We have jurisdiction to reconsider this sentence up to 30 days." At the hearing on this Petition, the attorneys for Relators indicated that they were well aware that Relators have a right to appeal this very issue to the State appellate court. We must, therefore, find that the Relators have not exhausted the remedies available to them in connection with this alleged violation of their federal constitutional rights.

■ We will now examine the Relators' third allegation:

That the lower court violated procedural due process as guaranteed by the Fourteenth Amendment in that sentence was imposed without Petitioners first being granted a hearing in accordance with the requirements of Section 1009 of the Pennsylvania Employe Relations Act of 1970 which provides that in fixing the amount of fine or imprisonment for contempt, the court shall consider all the facts and circumstances directly related to the contempt including but not limited to: (i) any unfair practices committed by the public employer during the collective bargaining processes; (ii) the extent of the wilful defiance or resistance to the court's order; (iii) the impact of the strike on the health, safety or welfare of the public; and (iv) the ability of the employe organization or the employe to pay the fine imposed.

In this allegation, Relators claim that their Fourteenth Amendment rights were violated because sentence was imposed without Petitioners having received a hearing in accordance with the requirements of Section 1009 of the Public Employe Relations Act of 1970. In the answer filed by the President Judge of the Court of Common Pleas it is averred that "the court heard oral argument pursuant to Section 1009 of the Pennsylvania Employes Relations Act of 1970, and gave careful attention to the argument of counsel and that section of the Act before imposing sentence." The transcript which is hereinafter quoted in this opinion shows that the Court did take these factors into consideration.

Then, of course, there may be a question as to whether a hearing is required to elicit the facts and circumstances as enumerated in 1009—where as in this case the sentencing judge actively participated in the original negotiations which averted the strike at the start of the school year and supervised the continuing negotiations during the remaining months before the current strike. Furthermore, the President Judge of the Court of Common Pleas presided over all the legal proceedings in the State Court with regard to the strike from the filing of the bill in equity, through the hearing on Relators' Preliminary Objections to the bill, the issuance of the injunction against the strike, the arraignment and plea of the Relators to the criminal contempt bill, and the jury trial which culminated in a finding of guilty up to and including the sentencing and past trial motions stage. In any event, the requirement, if any, for a hearing pursuant to Section 1009 of the Public Employe Relations Act of 1970 is a matter which may be determined by an appeal to the state appellate courts. We must, therefore, find that Relators have not exhausted the remedies available to them in connection with this alleged violation of their federal constitutional rights.

■ Now, we shall examine Relators' fourth allegation:

Section 1003 of the Public Employe Relations Act of 1970, 43 P.S. § 1101.-1003, which served as the jurisdictional basis upon which the injunction of January 11, 1973 was issued, is unconstitutional on its face in that it arbitrarily and capriciously discriminates against public school teachers in violation of their rights as guaranteed by the equal protection clause of the Fourteenth Amendment to the United States Constitution.

In this allegation, the Relators contend that Section 1003 of the Public Employe Relations Act of 1970 is unconstitutional on its face in that it discriminates against public school teachers in violation of their rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution. It is readily apparent that such an attack on the constitutionality of this Pennsylvania Statute should first be considered by the appellate court of the State. As paragraph 3 of Relators' Petition alleges in its appeal pending before the Commonwealth Court in connec-

tion with the order of the Common Pleas Court dated January 11, 1973, the Relators have challenged the jurisdiction of the Common Pleas Court and the propriety of its order under Section 1003 of the Public Employe Relations Act of 1970. Although this record does not disclose whether appellants argued this matter before the Commonwealth Court, if it is a relevant issue it can certainly be presented in any appeal from the judgment of sentence. We, therefore, find that Relators have not exhausted the remedies available to them in connection with this alleged violation of their federal constitutional rights. This precise issue has recently been determined by this Court in United States ex rel. Blair v. Johnson, 341 F.Supp. 492 (1972), wherein Chief Judge Lord said:

> In a case of this sort, involving as it does a challenge to the constitutionality of part of an important criminal statute of the Commonwealth of Pennsylvania, it would be singularly inappropriate for a federal court to interpose its hand unless it is clear that rejected the challenge or that all effective state avenues were closed. Cf. the state courts had considered and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

And of at least equal authority is the statement of Mr. Justice Brennan in Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971):

> We emphasize that the federal claim must be fairly presented to the state courts. If the exhaustion doctrine is to prevent "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution," Ex parte Royall, *supra* [117 U.S.], at 251 [6 S.Ct. 734, 29 L. Ed. 868], it is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindi-

cated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. See Darr v. Burford, *supra*, 339 U.S. at 203 [70 S.Ct. 587, 94 L. Ed. 761]; Davis v. Burke, 179 U.S. 399, 401–403 [21 S.Ct. 210, 45 L.Ed. 249] (1900).

We, therefore, find that the Relators have not exhausted the remedies available to them in connection with their allegation that the Public Employe Relations Act of 1970 is unconstitutional.

We shall now examine the Relators' fifth and final allegation:

> The denial of reasonable bail to Petitioners during the pendency of their appeal constitutes a violation of the rights guaranteed to them by the Eighth and Fourteenth Amendment to the United States Constitution. Petitioners are two officers of the Philadelphia Federation of Teachers with no previous criminal history and of undisputedly high standing in the community. Throughout the duration of the criminal trial for indirect criminal contempt, Petitioners were released on their own recognizance and appeared at each and every stage of the proceeding. Petitioners presently maintain, and have maintained throughout their adult life, residency in the City of Philadelphia and there is no dispute that they will not leave the jurisdiction of the Court pending disposition of the numerous legal issues in the instant matter. The District Attorney, who prosecuted the case on behalf of the Commonwealth of Pennsylvania, was not opposed to the extension of bail to Petitioners pending the disposition of the legal issues raised in the instant case (see letter of Philadelphia District Attorney Arlen Specter to the Supreme Court, marked Exhibit "A" attached hereto and made a part hereof). The illegal and void restraint and imprisonment of Petitioners is hampering

their ability to adequately prepare for the Appeals to the proper appellate courts with respect to the substantive issues raised by the rulings of the trial court. The incarceration of Petitioners will serve no rehabilitative purposes, and will only serve to impede the negotiations for a collective bargaining agreement between the Philadelphia Federation of Teachers and the Philadelphia School Board. The trial judge's denial of bail to Petitioners pending appeal was arbitrary, capricious and discriminatory in clear violation of Petitioners' rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

In this allegation the Relators contend that the denial of bail during the pendency of their appeal was arbitrary, capricious and discriminatory and in violation of their rights under the Eighth and Fourteenth Amendments to the United States Constitution. They allege and this Court finds as a fact that Relators are officers of the Philadelphia Federation of Teachers; that they have no previous criminal history; that they have a high standing in the community; that they appeared at each and every stage of the proceeding; that they presently maintain and have maintained throughout their adult life, residency in the City of Philadelphia; that there is little likelihood that they will leave the jurisdiction of the Court pending the disposition of the numerous legal issues in the instant matter; and that the District Attorney does not object to the state court granting bail to Relators (but does oppose the setting of bail by

the Federal Court in these proceedings). This court was not presented with any evidence that the Relators' part-time incarceration is hampering their ability to adequately prepare their Appeals or that it is serving no rehabilitative purpose or that it is impeding negotiations for a collective bargaining agreement between the Philadelphia Federation of Teachers and the Philadelphia School Board; we are, therefore, unable to make a finding as to these specific allegations.

This allegation of Relators must be carefully scrutinized. The record shows that on February 9, 1973 this very issue of bail was appealed to the Supreme Court of Pennsylvania, in a "Petition for Special Supersedeas and Stay of Execution of Sentence Pending Appeal." In an Order dated February 13, 1973 the Supreme Court of Pennsylvania denied said Petition and, in effect, refused to release these Relators on bail pending their appeal. While it may be argued that the Federal Constitutional violations which the Relators claim in connection with their denial of bail by the State Courts were never presented to the State Courts,[4] we shall nevertheless for the purpose of making a determination as to whether Relators' federal constitutional rights were violated in this regard make the assumption that they have exhausted the remedies available to them in the State Courts. However, before determining whether in the habeas corpus proceeding these Relators have a right at this time to be released on bail, let us have a look at the law.

Fortunately, the Judges in this United States District Court are all well aware of the complexities of the law in connec-

4. In Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971), the Supreme Court of the United States held, where Relator presented all the underlying facts of the constitutional claim to the state courts, that:

 . . . the constitutional claim . . . found inherent in those facts was never brought to the attention of the state courts. The Supreme Judicial Court dealt with the arguments respondent offered; we cannot fault that

court for failing also to consider *sua sponte* whether the indictment procedure denied respondent equal protection of the laws. Obviously there are instances in which 'the ultimate question for disposition' . . . will be the same despite variations in the legal theory or factual allegations urged in its support . . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.

tion with the power of the United States District Court with respect to bail for state prisoners as a result of a clarifying presentation by one learned in the subject at our recent Judicial Conference.

■ There are at least three situations where a writ is sought here in the United States District Court on behalf of a state prisoner who is seeking bail. The first is where a prisoner in state custody is awaiting trial and has been denied bail or is being held in excessive bail. In this situation, it appears that the Eighth Amendment applies to prevent excessive bail. See Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); United States ex rel. Goodman v. Kehl, 456 F.2d 863 (2d Cir. 1972); Simon v. Woodson, 454 F.2d 161, 164–165 (5th Cir. 1972); Mastrian v. Hedman, 326 F.2d 708, 711 (8th Cir. 1964), cert. den. 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982; Pilkinton v. Circuit Court of Howell County, Mo., 324 F.2d 45 (8th Cir. 1963).

■ The second situation is where a state prisoner has filed what appears to be a meritorious petition for habeas corpus, and seeks release from state custody pending a hearing on the petition. There is no question in this Circuit that the United States District Court has the inherent power under the habeas corpus statute, incident to its power to compel production of the petitioner at a hearing, to order the petitioner's release pending the hearing. United States ex rel. Thomas v. State of New Jersey, 472 F.2d 735 (3d Cir. 1973); Johnston v. Marsh, 227 F.2d 528, 530 (3d Cir. 1955). Such release of the prisoner pending a hearing is within the discretion of the district court, after weighing the absence of the presumption of innocence and the appropriate deference to state sensitivities against the considerations which may merit the release. United States ex rel. Slough v. Yeager, 449 F.2d 755 (3d Cir. 1971); Johnston v. Marsh, supra, 227 F.2d at 532 (concurring opinion of Hastie, J.).

■ The third situation is where a prisoner in the state custody has been convicted and has been denied bail by the state court pending his appeal to the state appellate court. This is the situation in which the Relators find themselves. The federal courts which have considered the right to bail for a convicted state prisoner pending appeal have determined that the Eighth Amendment does not give a right to bail after conviction. Bloss v. Michigan, 421 F.2d 903 (6th Cir. 1970); United States ex rel. Hall v. Commonwealth (E.D.Pa.Civ. No. 70–750) (Fullam, J. June 19, 1970) (unreported); United States ex rel. Klein v. Deegan, 290 F.Supp. 66 (S.D. N.Y.1967); Iles v. Ellis, 264 F.Supp. 185 (S.D.Ind.1967); United States v. Fiala, 102 F.Supp. 899 (W.D.Wash. 1951).

Relators rely on a few cases which appear to say that a convicted state prisoner may have a habeas corpus right to bail if his Fourteenth Amendment due process rights have been violated. In Rivera v. Concepcion, 469 F.2d 17 (1st Cir. 1972), the First Circuit directed the United States District Court to release the Relator on bail in a situation where the prisoner had been convicted and denied bail in August 1970, pending his appeal, which appeal was not expected to be heard until at least September 1973. In this situation, the Court found that such a delay was a deprivation of due process under the Fourteenth Amendment and followed a precedent it had earlier created in Odsen v. Moore, 445 F.2d 806 (1971). This is not the situation before this Court. In United States ex rel. Goodman v. Kehl, 456 F.2d 863 (2nd Cir. 1972), Judge Friendly discussed the Relators' constitutional right to bail, but finally determined that the Relator had not exhausted his remedies in the State Court. And in United State ex rel. Keating v. Bensinger, 322 F.Supp. 784 (N.D.Ill.1971) the Court holds that the failure of a State Court to give a reason to a convicted state prisoner for denial of bail pending appeal may be a violation of the prisoner's

rights under the Fourteenth Amendment. Judge Will, who wrote the opinion, said at page 788:

> However, as we have not ruled that petitioner has a constitutional right to bail but merely that his procedural rights guaranteed by the constitution have been violated, we feel obliged to allow the state the opportunity to correct this deficiency.

The Relators in this Court certainly have no cause to complain that they were not given a reason for denial of bail, because at the sentencing the record reveals that the President Judge of the Court reasoned, as follows:

> THE COURT: I have before me the very difficult problem of sentencing the Philadelphia Federation of Teachers, and Mr. Ryan & Mr. Sullivan, the two principle leaders of the Federation. I am sentencing them for a willful violation of a Court Order.

> \* \* \* \* \* \*

> There is much at stake here, both from the standpoint of the Federation and the City of Philadelphia. These defendants have chosen to have their guilt or innocence of the charge of contempt of Court determined by a jury, as they have a right to do under the Act of 1931. Therefore, we are now confronted with the Philadelphia Federation of Teachers, and individuals, who have been told by me on two occasions to obey the order of the Court, and now subsequently they have been told by a jury of their peers, citizens of the City of Philadelphia, that they are in contempt of a Court Order. In spite of all this, it is painfully apparent that the Philadelphia Federation of Teachers, and the defendants, continue to ignore the order of the Court, and they at this very moment continue in their display of contempt of the Court Order. It is perhaps ironic that the defendants on one hand insist upon their full statutory rights, while at the same time they continue to ignore the substantial constitutional rights of the children of Philadelphia to have an education. The individual defendants, I am

> aware, are individuals without prior criminal records. They are intelligent, and they are undoubtedly dedicated men, and undoubtedly religious men devoted to their church. It may be argued, as it has been implicitly at trial, and by Mr. Sagot in his closing arguments, that, if anything, they have flaunted the processes of the law as a matter of principle. It may be argued, as it has so eloquently been by Mr. Sagot, that they are merely standing up for the basic rights of collective bargaining and a tool of the strike of which they so firmly believe.

> \* \* \* \* \* \*

> As I said, these are intelligent men. They are good, thorough negotiators. They know full well that in pushing for the interest for which they have struggled, that they are challenging what is to be a much more meaningful principle, and that is the concept of an orderly society in which law, so long as it is law, must be obeyed. Simply, they have chosen the route of anarchy for their own goals. These are knowledgable men. They know full well that public employees in this Commonwealth, until recently, had no right to strike, and they know full well that right to strike was gained only after a struggle of convincing the State Legislators that the public employees should have the right to strike as a collective bargaining tool. It was only after conscientious and long effect that the Legislature adopted the Public Employe Relation Act, being convinced by those who were so active in the movement that it was a proper thing to do. The defendants know full well the contents of the Public Employees' Relations Act, and know full well the right to strike in the case of public employees is a powerful tool. They know full well that the Public Employe Relations Act contains restrictions upon that right to strike. They know full well that strikes in the public area can have disastrous effects on the public health, safety and welfare. They know full well that a strike in the public sector is vastly different than a strike in the non-

public sector in terms generally of effect on the public.

\* \* \* \* \* \*

In short, they have determined that to accomplish their goals, they must ignore a Court Order, they will do so. This is absolutely venal. They have chosen to take on a court system which is charged with the obligation of accomplishing justice. We do make mistakes, and certainly the Court makes mistakes in trying our best to accomplish justice. Whether a Court is right or wrong in ordering a strike be terminated under the Public Employe Relation Act is really not the issue. Nor is the issue how reasonable may be the claims of the defendants in the bargaining process. Based upon my connection with these negotiations, I can dwell at length upon the nature and background of these negotiations, but again, the soul issue is one of obedience to law. Mr. Sagot has quoted at length from many figures of history. Mr. Sagot, I have a quote of my own from the Supreme Court of the United States.

> 'Nothing can destroy a government more quickly than its failure to obey its own laws.'

In taking on the Court Order by ignoring it, the defendants have played with the future life of this City and the mental image of some 285,000 children as to what democracy is and what their obligations and responsibilities are with the system. You are even now delivering one massive lesson, 'If you don't like the law, you don't obey it.' This is one massive lesson in civil disobedience which is just simply another word for anarchy. It must be stopped, and it will be stopped. Neither you nor I, or any other American citizen, has a right to flaunt our responsibility on this society. Under the Public Employe Relations Act, the punishment each day contempt exists may be by a fine in the discretion of the Court. In fixing the amount of fine and/or imprisonment, we are instructed to consider all the facts and circumstances directly relating to the contempt, including, but not limited to, any unfair practices committed by the public employer during the collective bargaining process. I am not about to say the public employer has been entirely unfair and above-board in its proceedings. The extent of the willful defiance and resistance to the Court's Order, I think I need make no further comment than I have about the impact of this willful defiance and effect of the strike on the health, safety and welfare on the public. Four days after the strike began, I decided it was even then making a substantial impact on the health, safety and welfare of the public. I am ordered by the terms of the statute to consider the ability of the employee organization, or the employee, to pay the fine imposed. I have taken into consideration all of these factors. It is my determination that the punishment of the Philadelphia Federation of Teachers, Local #3, shall be a fine computed at the rate of $10,000 per day for each school day the defendants have disobeyed the Court Order dating from Friday, January 13, 1973, the day following the last of two orders directing you to return to work. By my calculation, including the 19th, until today, when the Union has still continued to defy the Court Order, the number of school days is 16. I find to date, therefore, the fine is $160,000, and for each day the strike continues hereafter, a fine upon the Union of $10,000 per day. As to each of the individual defendants, under the Public Employee Relations Act, upon refusal to obey the Order, this Court has jurisdiction to punish you for contempt by fine or by imprisonment in a County prison in the discretion of the Court. The Act of 1931 dealing with punishment and indirect criminal contempt proceedings we hold inapplicable.

The sentence of the Court is that you, John Ryan, and you, Frank Sullivan, stand committed in County prison for not less than six months nor more than four years. You, Frank Sullivan, I assess a fine of $5,000, and no fine in the case of John Ryan. We have jurisdiction to reconsider this sentence up to 30 days. After 30 days, your release will be determined solely by the State Parole

Board. The defendants shall stand committed. In the ordinary criminal process, the defendants are entitled to bail. This is not an ordinary criminal case. You have been found guilty of a willful contempt of a Court Order entered by a court sitting in equity. As an equitable court, this Court has the right to fashion appropriate remedies to bring about obedience to its decree. It is the opinion of this Court that to accomplish the purpose of the Court Order directing a termination of this strike, that the sentence must commence immediately. You will be released pending appeal of this sentence by the Court only upon compliance with my original mandate, to wit: 'The Strike be terminated.' You have a right to apply for writ of supersedious, Mr. Sagot. I take it you are making application for same?

MR. SAGOT: Yes, Your Honor.

THE COURT: Application denied.

MR. SAGOT: Your Honor will recall that I was under the opinion, since we are proceeding under the laws of Criminal—

THE COURT: We are proceeding under the Act of 1931.

MR. SAGOT: Correct.

THE COURT: The Act of 1931 provides only for the rights of an accused as to admission of bail accorded persons of crime. A person convicted is not, although conviction is no longer in the status of an accused may not be final until the appeal is terminated, but he is never the less in the status of convicted. I say to each of the defendants that they do have a right of appeal within 30 days with the assistance of counsel. If you cannot afford counsel, the Court will appoint counsel for you. Does each one of you understand that?

DEFENDANTS: Yes, Your Honor.

MR. SAGOT: We will file appeal today. You know I have had some discussions concerning that perhaps in open Court, I am not exactly certain, that we would file appeal from any imposition of sentence, let alone an imposition that

would be in excess of the penalties of the 1931 indirect criminal contempt act. At no time, Your Honor, did I ever doubt that this Court would not give the right of bail pending that appeal. This is the first time I have heard of that. Permit me, in all respect, Your Honor, to say I am really upset over it. I did not believe that this Court would deny the right—

THE COURT: I did not expect you would be pleased with me, Mr. Sagot: I am not here to please anybody. I am here to accomplish what our function is, and that is to see that the Court's orders are obeyed. You have a right, if I am wrong, to get bail from the Appellate Court. There has been a distinct and willful disobedience of a Court Order. You have chosen to take on the court system. As President Judge of this court system, I am just not going to tolerate it.

MR. SAGOT: It is your feeling, sir, if they are committed this moment pending my appeal and stay of supersedious from the Commonwealth Court, it is your feeling this would accomplish something? I really hope and believe you will give me several days in order to accomplish that, sir.

THE COURT: I have made by decision, Mr. Sagot. I won't change it.

■ Furthermore, we find nothing arbitrary, capricious and discriminatory in the denial of bail by the President Judge of the Court of Common Pleas, and apparently neither did the Supreme Court of Pennsylvania—it denied Relators' petition for special Supersedeas and Stay of Execution. An examination of the law of Pennsylvania in connection with the right to bail after conviction and pending appeal reveals that the prisoner's rights are clearly set forth in the Pennsylvania Rules of Criminal Procedure, Rule 4004, 19 P.S. Appendix of which provides:

(a) After a verdict of guilty and before sentence is imposed, a defendant shall have the same right to bail as he had before trial, except that the

trial judge, upon request or of his own motion, may increase or decrease the amount thereof.

(b) After sentence, bail may be allowed in such amount as shall be fixed by the trial judge conditioned upon the defendant perfecting an appeal within twenty days. If an appeal is perfected, such bail shall be effective until final determination of the appeal.

(c) When the sentence imposed by the trial judge is a fine or imprisonment not exceeding a term of two years, the defendant shall have an absolute right to bail, conditioned upon his perfecting an appeal within twenty days. Adopted Nov. 22, 1965. Eff. June 1, 1966.

Under Rule 4004(b) the granting of bail after sentence is in the discretion of the court where the sentence exceeds two years, which it did in this case. Rule 4004(c), which mandates bail even after conviction, is not applicable in that it applies only where the sentence does not exceed two years.

A review of the transcript of the sentencing quoted above shows that the President Judge specifically advised the Relators that bail would be set for their release upon their compliance with the court's Order that the strike be terminated; in other words, that the key to release was in the Relators' hands.

As stated by the Court of Appeals for the 8th Circuit in Mastrian v. Hedman, 326 F.2d 708, at page 711 (1964):

A federal court would not be entitled to act in substitution of judgment for that of the state court. What the state court did would have to be beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation. It would have to amount in its effect to legal arbitrariness in the administration of the bail right provided, so as to constitute a violation of due process, or to discriminatoriness in the application of the right as against petitioner, so as to constitute a violation of equal protection.

And the Court of Appeals for the Sixth Circuit in Bloss v. Michigan, 421 F.2d 903, at p. 906 (1970):

The United States District Courts do not, of course, sit as appellate courts to review the use or abuse of discretion of the state courts of Michigan in granting or withholding bail pending final appeal.

This Court, therefore, finds that the denial of bail pending the appeal of the Relators to the State Appellate Court after Relators had been found guilty by a jury and after a sentence of six months to four years had been imposed by the trial judge was not under the facts in this record arbitrary, capricious and discriminatory and did not in any manner violate the Relators' rights under the Eighth or the Fourteenth Amendment to the Constitution of the United States. Furthermore, the Court finds that there is no probable cause for appeal.